946 F.2d 103
 RESOLUTION TRUST CORPORATION, in its capacity as Conservator
for Savers Savings Association, Plaintiff-Appellee,
v.
MUSTANG PARTNERS, a Missouri Limited Partnership, Defendant-Appellant,
v.
RESOLUTION TRUST CORPORATION, in its capacity as Receiver
for Savers Federal Savings and Loan Association,
Third-Party-Defendant-Appellee.
 No. 90-6276.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 6, 1991.
Publication Ordered Sept. 26, 1991.
 
 Ricki V. Sonders of Edwards, Sonders & Propester, Oklahoma City, Okl., for plaintiff-appellee Resolution Trust Corp. as Conservator for Savers Sav. Ass'n.
 T.P. Howell, IV of Edwards, Sonders & Propester, Oklahoma City, Okl., for third-party-defendant-appellee Resolution Trust Corp. as Receiver for Savers Federal Sav. and Loan Ass'n.
 Kelley L. Cornelius, Oklahoma City, Okl., for defendant-appellant.
 Before LOGAN, MOORE and BALDOCK, Circuit Judges.
 PER CURIAM.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Defendant Mustang Partners (Mustang) appeals the district court's order of July 27, 1990, in favor of the plaintiff Resolution Trust Corporation (RTC-conservator), in its capacity as conservator for Savers Savings Association (SSA), allowing RTC-conservator to have and recover judgment on certain promissory notes and to foreclose certain mortgages. Mustang also appeals the district court's order of July 17, 1990, granting summary judgment to counterclaim defendant Resolution Trust Corporation (RTC-receiver), in its capacity as receiver for Savers Federal Savings and Loan Association (Savers) and against Mustang on Mustang's counterclaims. On appeal, Mustang specifically asserts: (1) The district court abused its discretion in finding that Mustang was in default under the terms of the promissory notes, and (2) Mustang should be allowed to assert its counterclaims against RTC-receiver.[1] We affirm.
 
 
 3
 In December 1985, Mustang executed and delivered two loan agreements, three promissory notes, and two leasehold mortgages to Savers. The notes, one in the amount of $4,175,000.00 (note # 1), one in the amount of $508,218.56 (note # 2), and one in the amount of $200,000.00 (note # 3), were secured by leasehold mortgages on Mustang's interest in an apartment complex. On August 29, 1988, Savers filed suit in Oklahoma state court to obtain a judgment on the notes and to foreclose on the leasehold mortgages. Subsequent to filing suit, on February 10, 1989, Savers was placed in the conservatorship of the Federal Savings and Loan Insurance Corporation (FSLIC). On March 10, 1989, FSLIC removed the state court action to the United States District Court for the Western District of Oklahoma.
 
 
 4
 On October 5, 1989, Savers' conservatorship was replaced with a receivership and plaintiff Resolution Trust Corporation was named as receiver. The Office of Thrift Supervision (OTS) immediately chartered Savers Savings Association appointing RTC as conservator of the new entity. On October 16, 1989, the district court substituted RTC-conservator as the plaintiff, and RTC-receiver as the counterclaim defendant in this action.
 
 I.
 
 5
 Mustang first contends that the district court erred in concluding that Mustang was in default under the terms of note # 1. The interpretation of the construction of a written instrument is a question of law which we review de novo. See Caven v. American Fed. Sav. & Loan Ass'n of Colo., 837 F.2d 427, 430 (10th Cir.1988). "The language in a contract is given its plain and ordinary meaning...." United Bank & Trust Co. v. Kansas Bankers Sur. Co., 901 F.2d 1520, 1522 (10th Cir.1990).
 
 
 6
 Under the terms of the loan agreement, in the event of default, Mustang was allowed ten days (plus three days for mailing) following written notice in which to cure the default. In the event the default was not cured within the allotted time, Savers could accelerate the entire balance and foreclose all security interests. Payments on note # 1 were to commence January 1, 1986, and consist of interest only payments until January 1, 1991, when payments of principal and interest would commence. The first twenty-four payments were to be in the amount of $34,356.70 per month. Mustang was to pay $17,395.77 of this amount with the balance paid as a draw from loan # 2. Commencing on January 1, 1988, Mustang was to pay $26,093.68, of the $34,356.70, per month with the balance to be paid as a draw from loan # 2.
 
 
 7
 On February 4, 1988, Savers mailed Mustang notice of default on note # 1, demanding curative payment in the amount of $139,827.93 for the months of November and December 1987, and January and February 1988. On February 13, 1988, Mustang paid $34,791.34 to Savers. On February 16, 1988, Savers notified Mustang by letter that an additional $52,184.56 was still owing in order to cure the default. Mustang subsequently remitted $26,093.58 on February 18, 1988, and an additional $52,187.16 on April 4, 1988. These last two payments were made outside the thirteen days allowed to cure the default. No further payments were made by Mustang.
 
 
 8
 Mustang claims that because the amount stated as owed in the February 4, 1988 notice of default was "incorrect," the "second notice of default" sent on February 16, 1988, "served to modify it and allow Mustang additional time to comply with the notice of default." Appellant's Brief at 10. Mustang further alleges that because interest was to be paid in arrears, it was not in default at the time the suit was filed.
 
 
 9
 Giving total credence to its argument that interest was to be paid in arrears, the amount owed by Mustang on February 4, 1988, to cure the default was, by its own calculation, $60,884.92.[2] Id. at 11. Mustang paid $34,791.34 on February 13, 1988. This was the only payment made within the thirteen days allowed for curing the default. According to either party's calculation, the amount was not sufficient to cure.
 
 
 10
 Mustang relies heavily on the Oklahoma case of Murphy v. Fox, 278 P.2d 820 (Okla.1955) to support its argument that it was guilty of only technical default which does not warrant foreclosure. In Murphy, the mortgagee refused to accept proffered payment, thereby causing default. The Oklahoma Supreme Court stated that equity can relieve a mortgagor from acceleration and foreclosure "where there has been a technical default due to a mistake or mere venial inattention and of no damage to the mortgage security or prejudice to the mortgagees." Id. at 826. Savers' statement of the amount owed by Mustang to cure the default was inclusive of the amount to be drawn from note # 2 and late charge penalties. Even were we to consider this an error, the error did not cause or propagate the default, nor does it equate with mistake or inattention of the magnitude that would excuse Mustang's default or delay Mustang's obligation to cure.
 
 
 11
 It is clear that Mustang was in default on the date that Savers mailed the required notice. It is equally clear that, by anyone's mathematics, Mustang failed to cure the default prior to expiration of the allotted time. We can find no authority which would support Mustang's argument that they were entitled to additional time to cure because of Savers' alleged "mistake" in stating the amount owed by Mustang to cure the default. Mustang was notified and did not dispute the default. By its own admission, Mustang conceded knowledge of the amount owed to cure the default even if interest was to be paid in arrears. Mustang failed to cure the default.
 
 
 12
 Mustang further refutes the district court's conclusion, without elaboration, that its additional defenses were ineffective against RTC-conservator. In its reply brief, Mustang defines these defenses as (1) "an invalid Notice of Default;" (2) "estoppel for acceptance and application of payments prior to acceleration after the invalid February 4, 1988 Notice;" and (3) "latches for SFSLA's remaining silent for the period of time between the invalid Notice of Default on February 4, 1988, and the alleged acceleration on August 25, 1988." Appellant's Reply Brief at 8. Although it is unclear upon what basis the district court made its decision regarding Mustang's right to assert these defenses, due to our disposition in this case, and because these defenses are based upon Mustang's erroneous assertion that the February 4, 1988, notice of default was invalid, we find that a discussion of the merits of the parties' arguments regarding this issue would be moot. We therefore conclude that the district court was correct in entering judgment allowing RTC-conservator to have and recover judgment on the notes and to foreclose.
 
 II.
 
 13
 Mustang's second contention is that the district court erred in its determination that its failure to submit a proof of claim within ninety days of its receipt of RTC's notice to creditors serves to bar its counterclaims against RTC-receiver, and that its grant of summary judgment to RTC-receiver on this issue is in error. Our review of the district court's grant of summary judgment involves the same standard employed by the district court under Fed.R.Civ.P. 56(c). Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). We review the record to determine if any genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. Id. In addition, we must construe all facts and reasonable inferences in a light most favorable to the opposing party. Anderson v. Department of Health & Human Servs., 907 F.2d 936, 946-47 (10th Cir.1990).
 
 
 14
 Pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), RTC-receiver is required to give notice to all creditors of a failed institution that they have ninety days in which to file a proof of claim with the RTC-receiver. 12 U.S.C. § 1821(d)(3)(B)(i). It is undisputed that RTC-receiver complied with the notice requirement to Mustang on October 13, 1989, and that Mustang failed to present any claim within the ninety-day period.
 
 
 15
 However, Mustang argues that because the suit was pending at the time RTC was named receiver, RTC-receiver had ample notice of Mustang's counterclaims, and no further notice of Mustang's claims was required. "The starting point for interpretation of a statute 'is the language of the statute itself.' " Kaiser Aluminum & Chem. Corp. v. Borjorno, 494 U.S. 827, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). When it is determined that the language of a statute is plain and unambiguous, the court may only enforce it in conformance with the language. Frieouf v. United States, 938 F.2d 1099, 1102-03 (10th Cir.1991) (citations omitted); see also Wilson v. Stocker, 819 F.2d 943, 948 (10th Cir.1987) ("[w]hen the terms of [a] statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances.").
 
 
 16
 We agree with the district court's determination that a thorough reading of the applicable provisions in FIRREA fails to produce any language which could be construed to support Mustang's argument that the claim procedures can be dispensed with in cases where suit was filed prior to the appointment of the receiver. We also concur with RTC-receiver's argument that the language in FIRREA, allowing parties with claims to file suit "or continue an action commenced before the appointment of the receiver" in the event the claim is disallowed, serves to controvert Mustang's argument. 12 U.S.C. § 1821(d)(6)(A) (emphasis added). The statute clearly requires that each creditor file a claim. 12 U.S.C. § 1821(d)(3)(B)(i). In the event the claim is disallowed, the creditor can then file suit or continue to pursue a suit already filed. No interpretation is possible which would excuse this requirement for creditors with suits pending, or allow the filing of suit to substitute for the claim process.
 
 
 17
 Mustang further relies on 12 U.S.C. § 1821(d)(5)(F)(ii) which states: "Subject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." Again we are in agreement with the district court that this provision cannot be construed in any way to support Mustang's contention that its counterclaims survive its failure to comply with FIRREA's claim requirements. On the contrary, we conclude that Mustang's right to continue pursuing its pending lawsuit is dependent upon its compliance with FIRREA's claims provisions. See 12 U.S.C. § 1821(d)(6)(B).
 
 
 18
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 [1]
 RTC notes in its brief that Mustang's brief incorrectly stated this point as "counterclaims against the RTC-conservator." RTC further notes that it confirmed with Mustang that this was a typographical error and that the correct reading is "RTC-receiver."
 
 
 [2]
 The district court stated that "[t]he promissory note dated December 30, 1985, in the original principal amount of $4,175,000.00 ("Note 1") is unambiguous in its requirement that interest be prepaid monthly." Appellant's Brief, Findings of Fact and Conclusions of Law, Tab C at 2