USCA1 Opinion

 

 May 15, 1992 _________________________ No. 92-1113 92-1179 SERGE MARQUIS, ET AL., Plaintiffs, Appellees, v. FEDERAL DEPOSIT INSURANCE CORPORATION, AS LIQUIDATING AGENT OF HILLSBOROUGH BANK & TRUST COMPANY, Defendant, Appellant. _________________________ No. 92-1216 ELTREX INTERNATIONAL CORPORATION, ET AL., Plaintiffs, Appellees, v. FEDERAL DEPOSIT INSURANCE CORPORATION, AS LIQUIDATING AGENT OF HILLSBOROUGH BANK & TRUST COMPANY, Defendant, Appellant. _________________________ No. 92-1217 MICHAEL M. MILLS, Plaintiff, Appellee, v. FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR NASHUA TRUST COMPANY, Defendant, Appellant. _________________________ No. 92-1218 JAMES P. GOODRICH, Plaintiff, Appellee, v. FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR DARTMOUTH BANK, Defendant, Appellant. _________________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Shane Devine, U.S. District Judge] ___________________ _________________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Young,* District Judge. ______________ _________________________ Michael H. Krimminger, Counsel, with whom Ann S. Duross, ______________________ ______________ Assistant General Counsel, and Richard J. Osterman, Jr., Senior _________________________ Counsel, were on brief, for appellant Federal Deposit Insurance Corporation. Jay L. Hodes, with whom Heather M. Jeans and Bossie, Kelly & ____________ ________________ _______________ Hodes, P.A., were on brief, for appellees Serge Marquis, et al. ___________ Eleanor Dahar, with whom Victor W. Dahar, P.A., was on ______________ _______________________ brief, for appellees Eltrex International Corp., et al. _________________________ _________________________ _______________ *Of the District of Massachusetts, sitting by designation. SELYA, Circuit Judge. These consolidated appeals raise SELYA, Circuit Judge. _____________ an important question concerning the extent of the restrictions on the federal courts' subject matter jurisdiction imposed by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub. L. No. 101-73, 103 Stat. 183, codified in scattered sections of 12 U.S.C. (Supp. II 1990). The Federal Deposit Insurance Corporation (FDIC) claims that FIRREA's jurisdictional bar, 12 U.S.C. 1821(d)(13)(D), requires federal courts to dismiss virtually all civil actions pending against a failed financial institution at the time the FDIC is appointed as receiver. The court below rejected this broadcast claim. After careful consideration of the relevant portions of the Act, we hold that FIRREA does not require courts automatically to dismiss all actions instituted against a failed bank prior to the FDIC's appointment as receiver of the institution. I. BACKGROUND I. BACKGROUND The nature of this proceeding does not demand an exegetic discussion of particular facts.1 It suffices to recount seven events common to the four underlying cases: 1. The plaintiff (or co-plaintiffs, in two of the cases) sued an FDIC-insured financial institution in a New ____________________ 1In brief, appellees Serge Marquis and Gail Marquis sued Hillsborough Bank & Trust Company for breach of contract, breach of fiduciary duty, and misrepresentation in connection with a second mortgage loan. Appellees Eltrex International Corp. and Thomas Sullivan sued Hillsborough for rescission of a $400,000 promissory note and for damages in respect thereto. Appellee Michael Mills sued Nashua Trust Company for damages stemming from breach of fiduciary duty, misrepresentation, wrongful foreclosure, etc. Appellee James Goodrich sued Dartmouth Bank for indemnification. 3 Hampshire state court. 2. The pleadings stated one or more claims for money damages, chargeable against the institution's assets, arising out of some challenged banking practice. 3. The financial institution was declared insolvent while the litigation was pending. 4. The FDIC was appointed as receiver, see 12 U.S.C. ___ 1821(c)(3)(A), and thereupon removed the case to federal district court. See 12 U.S.C. 1819(b)(2)(B). ___ 5. Once removal was perfected, the FDIC sought dismissal, contending that the court lacked subject matter jurisdiction to adjudicate the creditors' claims unless and until those claims were timely filed with, and processed through, the administrative mechanism embodied in FIRREA. See 12 U.S.C. ___ 1821(d)(3)-(10). 6. The district court denied the motion for dismissal (but, eventually, stayed proceedings to permit resort to, and operation of, FIRREA's administrative claims review process). 7. At the FDIC's request, the district court certified its ruling regarding subject matter jurisdiction for interlocutory appeal.2 Because of the importance of the jurisdictional question, and its unsettled nature, we accepted appellate jurisdiction, see 28 U.S.C. 1292(b) (1988), and expedited the ___ appeals. II. ISSUE PRESENTED II. ISSUE PRESENTED In this case, our inquiry reduces to a single question: do the federal courts retain subject matter jurisdiction over actions pending against failed financial institutions once the ____________________ 2Only three of the appeals were actually certified under 28 U.S.C. 1292(b) (1988). The remaining appeals, which together implicate a single case, are before us in a more problematic posture. Because all five appeals present the same substantive question, however, we have concluded that the difference in how they arrived on our doorstep need not be addressed. 4 FDIC has been appointed as receiver? We answer this query in the affirmative, noting, moreover, that our ensuing discussion applies equally to the Resolution Trust Corporation (RTC) in those instances where the RTC is appointed as the receiver of a failed financial institution in place of the FDIC, see 12 U.S.C. ___ 1441a(b)(4). Ancillary to this response, we also examine, and comment upon, the federal courts' powers to stay litigation pending completion of FIRREA's administrative claims review process (ACRP). III. ANALYSIS III. ANALYSIS FIRREA's text comprises an almost impenetrable thicket, overgrown with sections, subsections, paragraphs, subparagraphs, clauses, and subclauses a veritable jungle of linguistic fronds and brambles. In light of its prolixity and lack of coherence, confusion over its proper interpretation is not only unsurprising it is inevitable. Our concern here is with 12 U.S.C. 1821(d) (Supp. II 1990), reproduced in the Appendix. This section deals, generally, with the FDIC's powers and duties when acting as a receiver of a failed financial institution. In the interest of affording context, it may be noted that section 1821(d) trails directly in the wake of statutory descriptions of the FDIC's responsibilities for insuring deposits, 12 U.S.C. 1821(a); intervening in bank liquidations, 12 U.S.C. 1821(b); and becoming the receiver for failed depository institutions, 12 U.S.C. 1821(c). Section 1821(d), then, is a relatively small 5 piece of the statutory puzzle but one which exemplifies the larger interpretive problem: section 1821(d) is comprised of nineteen separately numbered fascicles, most with myriad subparts, occupying seven pages of the United States Code. It is, in short, an avalanche of words. A. A. __ We begin our analysis with the rudiments of the statutory scheme. We think that FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions, regardless of whether lawsuits to enforce those claims were initiated prior to the appointment of a receiver.3 See Meliezer v. RTC, 952 ___ ________ ___ F.2d 879, 882 (5th Cir. 1992) ("Although FIRREA does not explicitly mandate exhaustion of administrative remedies before judicial intervention, the language of the statute and indicated congressional intent make clear that such is required."); FDIC v. ____ Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991) (in ___________________________ enacting FIRREA, "Congress expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that are made outside the procedure set forth in section 1821."); see also RTC ___ ____ ___ v. Elman, 949 F.2d 624, 627 (2d Cir. 1991); RTC v. Mustang _____ ___ _______ ____________________ 3The courts are in some disarray as to the exact source of this exhaustion requirement. Compare, e.g., RTC v. Elman, 949 _______ ____ ___ _____ F.2d 624, 627 (2d Cir. 1991) (citing 12 U.S.C. 1821(d)(13)(D)(i) for proposition), with, e.g., RTC v. Mustang ____ ____ ___ _______ Partners, 946 F.2d 103, 106 (10th Cir. 1991) (per curiam) (citing ________ 12 U.S.C. 1821(d)(3)(B)(i) for proposition). The instant appeals do not require us either to reconcile, or to choose among, these conflicting views. 6 Partners, 946 F.2d 103, 106 (10th Cir. 1991) (per curiam); Coston ________ ______ v. Gold Coast Graphics, Inc., 782 F. Supp. 1532, 1537 (S.D. Fla. __________________________ 1992). But see FDIC v. Grillo, ___ F. Supp. ___, ___ (D.N.H. ___ ___ ____ ______ 1992) [1992 WL 70100, at *7] (holding that "utilization of the administrative adjudication procedure is not mandatory or exclusive"). Accordingly, we rule that, where a claimant has been properly notified of the appointment of a federal insurer as receiver, 12 U.S.C. 1821(d)(3)(B)-(C), and has nonetheless failed to initiate an administrative claim within the filing period, 12 U.S.C. 1821(d)(3)(B)(i), the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court. See 12 U.S.C. ___ 1821(d)(5)(C)(i). To this point, our analysis comports with the FDIC's views. But at the next crossroad, we head in different directions. The FDIC not only urges that claimants must exhaust the remedies afforded by the ACRP, but says that, while the ACRP runs its course, preexisting actions must be dismissed (even though, as a practical matter, claimants can file new lawsuits if not fully satisfied with the outcome of the administrative proceedings, see 12 U.S.C. 1821(d)(6)(A)). This is the ___ matter's crux. B. B. __ The FDIC bases its argument on the following statutory provision: Except as otherwise provided in this subsection, no court shall have jurisdiction over 7 (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver. 12 U.S.C. 1821(d)(13)(D). The jurisdictional bar of section (d)(13)(D) reaches all claims seeking payment from the assets of the affected institution; all suits seeking satisfaction from those assets; and all actions for the determination of rights vis-a-vis those assets. See Rosa v. RTC, 938 F.2d 383, 393 (3d ___ ____ ___ Cir.), cert. denied, 112 S. Ct. 582 (1991). Starting from this _____ ______ baseline, the FDIC asserts that, with respect to suits pending against financial institutions at the time an FDIC receivership ensues, no jurisdiction inheres until after the ACRP, described in subsections (d)(3)-(10), has run its course.4 Quite plainly, Congress intended the ACRP to provide a streamlined method for resolving most claims against failed institutions in a prompt, orderly fashion, without lengthy litigation. See H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., ___ ____________________ 4These subsections grant to the FDIC, acting in its capacity as receiver, the authority to determine claims against the failed institution. The same subsections set out basic guidelines governing the ACRP. Among the more important provisions under the FDIC's interpretation are subsections (d)(5)(A)(i) (requiring that an administrative determination be made within 180 days next following the filing of a claim), 12 U.S.C. 1821(d)(5)(A)(i); subsection (d)(5)(A)(ii) (allowing an extension of the claims processing period upon written agreement of the claimant and the FDIC), 12 U.S.C. 1821(d)(5)(A)(ii); and subsection (d)(6)(A) (authorizing further administrative review or de novo judicial review of disallowed claims, as the claimant prefers), 12 U.S.C. 1821(d)(6)(A). 8 at 418-19, reprinted in 1989 U.S.C.C.A.N. 86, 214-15 ("The claims ____________ determination procedure . . . creates a system which . . . enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly."). In the FDIC's view, this intent would be thwarted if pending actions were allowed to proceed in the district court in lieu of, or concurrent with, the processing of administrative claims premised on the same nucleus of operative facts. This interpretation, however, seems inconsistent with other parts of FIRREA. The single sentence which is most difficult to harmonize with the FDIC's reading of the statute is the provision which states that, subject to the 90-day stay described elsewhere in the statute, see 12 U.S.C. ___ 1821(d)(12)(A), "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of a receiver." 12 U.S.C. 1821(d)(5)(F)(ii). What could be more prejudicial to a claimant's right "to continue" a pending action than the outright dismissal of the action? The FDIC's attempted answer strikes us as lame. It argues that 12 U.S.C. 1821(d)(5)(F)(ii) and its counterpart, 12 U.S.C. 1821(d)(8)(E)(ii) (providing a similar disclaimer of prejudice with reference to parties proceeding under FIRREA's expedited claims procedures), do not serve to insulate pre- receivership suits from dismissal, but merely protect pre- receivership litigants from actual prejudice, such as time bars, 9 pending completion of the ACRP. That asseveration, however, fails to explain why Congress used the verb "continue" rather than a verb such as "recommence" or "refile." Indeed, the FDIC's recension of the law simply reads the word "continue" out of the statute. It is also difficult to imagine why Congress would have felt a need to provide for stays of pending suits, 12 U.S.C. 1821(d)(12), if such suits were automatically to be dismissed. Once again, the FDIC has an answer but not a good one. It contends that withdrawing cases from the courts by automatic dismissal does not make a nullity of the 90-day stay provision, since 12 U.S.C. 1821(d)(12) applies not only to actions brought against insolvent financial institutions but also to actions _______ brought by those institutions (and thus, the subsection serves to __ furnish the FDIC with an opportunity to freeze litigation for a brief period in order to familiarize itself with claims which it bears the burden of pursuing, if it so chooses). But, the stay provision applies to actions in which the institution is "a party," id., not merely to actions in which the institution is "a ___ plaintiff." And, the FDIC has pointed to nothing in FIRREA's compendious legislative history that suggests Congress was thinking along the lines of a plaintiff/defendant dichotomy in fashioning FIRREA's stay provisions. C. C. __ The sockdolager is that the jurisdictional bar upon which the FDIC relies contains a specific exemption allowing 10 retention of cases if, and to the extent that, jurisdiction is "otherwise provided in this subsection." 12 U.S.C. 1821(d)(13)(D). The reference to "this subsection," when read in context, is clearly a reference to section 1821(d) in its entirety.5 Accord Simms v. Biondo, ___ F. Supp. ___, ___ ______ _____ ______ (E.D.N.Y. 1992) [1992 WL 41560, at *3]. Section 1821(d)'s grant of jurisdiction is variously expressed. See, e.g., 12 U.S.C. ___ ____ 1821(d)(6)(A) (conferring district court jurisdiction to entertain suits based upon disallowed claims); 12 U.S.C. 1821(d)(7)(A) (conferring district court jurisdiction to entertain suits based on claims which, after initial disallowance, have undergone administrative review); 12 U.S.C. 1821(d)(8)(C) (conferring district court jurisdiction to entertain suits based on claims disallowed under the expedited claims procedure). In addition to these express grants of jurisdiction over disallowed claims, however, section 1821(d) also implies the existence of jurisdiction in other circumstances. See, e.g., 12 U.S.C. 1821(d)(13)(B) (a ___ ____ provision that vests the FDIC, qua receiver, with "all the rights ___ and remedies available" to the failed institution to pursue appealable judgments, and thus allows for continued appellate jurisdiction). In much the same manner, we think that subsections (d)(5)(F)(ii), (d)(8)(E)(ii), and (d)(12) coalesce to ____________________ 5We reject the contrary conclusion reached in New Maine __________ Nat'l Bank v. Reef, 765 F. Supp. 763 (D. Me. 1991). The New __________ ____ ___ Maine court incorrectly read the "otherwise provided in this _____ subsection" language as referring only to 1821(d)(13)(D), rather than to all of 1821(d). Id. at 765. ___ 11 show Congress' discernible intent to preserve jurisdiction over civil actions filed against failed institutions prior to the FDIC's appointment as receiver. Subsection (d)(5)(F)(ii) is part of the rubric that establishes the ACRP.6 It states that, "[s]ubject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. 1821(d)(5)(F)(ii). The provision to which this subsection refers is entitled "Suspension of Legal Actions." It provides in relevant part: After the appointment of a . . . receiver for an insured depository institution, the . . . receiver may request a stay for a period not to exceed . . . (ii) 90 days . . . in any judicial action or proceeding to which such institution is or becomes a party. 12 U.S.C. 1821(d)(12)(A). The next subparagraph commands courts to grant all such stays, when and if requested. 12 U.S.C. 1821(d)(12)(B). We read these sections, in combination, as constructing a scheme under which courts will retain jurisdiction over pending lawsuits suspending, rather than dismissing, the suits subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it ____________________ 612 U.S.C. 1821(d)(8)(E)(ii), which is part of the rubric that establishes the expedited claims procedure, is worded identically to 12 U.S.C. (d)(5)(F)(ii) and, thus, bolsters the view that we take of FIRREA jurisdiction. 12 pertains to the underlying claims. In our opinion, reading FIRREA in this fashion is as faithful as possible to the statute's text, harmonizes its various provisions, and is consistent with the policies which Congress sought to advance. Faced with a national banking crisis, Congress wanted to facilitate takeovers of insolvent financial institutions and smooth the modalities by which rehabilitation might be accomplished. To this end, FIRREA was designed to create an efficient administrative protocol for processing claims against failed banks. This objective would be disserved by forcing the courts to dismiss all pending litigation, only to have the cases refiled when and if administrative settlement proved impracticable. It is difficult to conceive of anything less efficient than dismissing a suit that has been, say, two years in process, only to have an identical suit started afresh some six months later. By staying all proceedings in a pending action until the administrative claims process has run its course, efficacy will be promoted. At that point, suits based upon resolved claims can be dismissed outright, whereas suits based upon claims still unresolved can simply be resumed, thereby dispelling the need to retrace steps already completed. By the same token, other policies which Congress obviously sought to advance in enacting FIRREA fairness to claimants, minimization of expense, and thoughtful husbanding of scarce judicial resources are also furthered by reading the 13 statute as we do. Claimants will be spared the unnecessary costs of refiling cases and bringing them up to speed. Courts will similarly be spared the trouble of starting from ground zero in each and every case in which an administrative settlement does not materialize. In short, four powerful indicators of FIRREA's meaning the structure of the Act, its language, the underlying legislative intent, and common sense unanimously counsel in favor of a construction of FIRREA that permits federal courts to retain subject matter jurisdiction in circumstances where a bank's failure (and the FDIC's appointment as receiver) postdates the institution of a suit against the bank. D. D. __ We were informed, at oral argument, that in one of these cases the district court entered a supplemental stay extending the original stay from 90 days to 180 days to allow for completion of the ACRP. This raises the related question of whether the 90-day stay described in 12 U.S.C. 1821(d)(12) limits the duration of stays that may be granted when FIRREA intercepts a pre-receivership suit. We do not believe that any such limitation exists. It is beyond cavil that, absent a statute or rule to the contrary, federal district courts possess the inherent power to stay pending litigation when the efficacious management of court dockets reasonably requires such intervention. See Landis ___ ______ v. North Amer. Co., 299 U.S. 248, 254-55 (1936); In re Ramu ________________ ___________ 14 Corp., 903 F.2d 312, 318 (5th Cir. 1990); Harmon Kardon, Inc. v. _____ ___________________ Ashley Hi-Fi, 602 F.2d 21, 23 (1st Cir. 1979); see also HMG _____________ ___ ____ ___ Property Investors, Inc. v. Parque Indus. Rio Canas, Inc., 847 _________________________ _______________________________ F.2d 908, 915-16 (1st Cir. 1988) (discussing federal courts' "inherent power to provide themselves with appropriate instruments required for the performance of their duties") (quoting Ex Parte Peterson, 253 U.S. 300, 312 (1920)). Of __________________ course, stays cannot be cavalierly dispensed: there must be good cause for their issuance; they must be reasonable in duration; and the court must ensure that competing equities are weighed and balanced. See, e.g., Ainsworth Aristocrat Int'l Pty. Ltd. v. ___ ____ ______________________________________ Tourism Co. of P.R., 818 F.2d 1034, 1039 (1st Cir. 1987); ______________________ Providence Journal Co. v. FBI, 595 F.2d 889, 890 (1st Cir. 1979); ______________________ ___ Chang v. Univ. of R.I., 107 F.R.D. 343, 344 (D.R.I. 1985). _____ _____________ In our judgment, FIRREA cannot be read to foreclose district courts from granting stays above and beyond the 90-day automatic stay described in section 1821(d)(12). Moreover, given Congress' insistence that virtually all claims against failed financial institutions should be subjected to administrative scrutiny once the FDIC steps in as a receiver, we see no reason why, in the vast majority of leftover pre-receivership cases, district judges would not, upon request of a party, hold pending litigation in abeyance until the administrative review process has run its course, or 180 days has passed, whichever first 15 occurs.7 See Simms, ___ F. Supp. at ___ [1992 WL 41560, at *3] ___ _____ (staying pending action as suggested herein); Coston, 782 F. ______ Supp. at 1533, 1536 (Congress intended that pending actions be stayed until the ACRP was completed); In re FDIC, 762 F. Supp. ___________ 1002, 1004-05 (D. Mass. 1991) (although FIRREA does not explicitly provide for a stay greater than 90 days, a stay for the duration of the claims processing period is necessarily implied); Tuxedo Beach Club Corp. v. City Fed. Sav. Bank, 737 F. _______________________ ___________________ Supp. 18, 20 (D.N.J. 1990) (Congress intended 180 day stay); see ___ also Bank of New England v. Callahan, 758 F. Supp. 61, 64 (D.N.H. ____ ___________________ ________ 1991) (staying action for duration of claims processing period); cf. Fillinger v. Cleveland Soc'y for the Blind, 587 F.2d 336, 338 ___ _________ _____________________________ (6th Cir. 1978) (staying suit to permit exhaustion of administrative and arbitral remedies under newly enacted statute). IV. CONCLUSION IV. CONCLUSION We need go no further. We hold that FIRREA did not strip the federal courts of subject matter jurisdiction over civil actions pending against a failed financial institution at the time the FDIC takes over as the institution's receiver. The court may, however, in its discretion and ordinarily should stay proceedings for more than the 90 days specified in 12 U.S.C. 1812(d)(12) so as to permit exhaustion of the mandatory ____________________ 7In the event that the claimant and the receiver agree to extend the claims processing period, see 12 U.S.C. ___ 1821(d)(5)(A)(ii), we envision that the court could extend the stay to correspond with the elongated period. 16 administrative claims review process.8 Hence, we affirm the district court's refusal to dismiss the underlying actions for want of subject matter jurisdiction and remand the cases to the court below for further proceedings not inconsistent herewith. Costs shall be taxed in appellees' favor. So Ordered. So Ordered. __________ ____________________ 8We note that, by explicitly providing for a 90-day stay in judicial proceedings when the claims process will, in all likelihood, require more time to run its course, Congress has left the courts without clear direction regarding the issuance of longer stays. In the interest of statutory housekeeping, Congress may wish to revisit FIRREA and cure this apparent lapse. 17