BRADY DEVELOPMENT COMPANY, INCORPORATED; Gordon L. Albro; Agnes C. Albro; Chester B. Bahn; Elaine B. Bahn; Alan M. Baker; Jacqueline Hansen Baker; Howard C. Bates; Carol J. Bates; Ned S. Bauer; Elaine Hough Bauer; John J. Bevan; Yolanda Bevan; Thomas A. Brophy; Clare S. Brophy; Bruce W. Campbell; Susan M. Campbell; Nai Chung Chang; John W. Cole; Joan Cole; Harry W. Cost; Ralph J. Dalessio; Grace Ann Dalessio; Walter Dermody; Carol Dermody; Albert I. Dodd; Lorraine K. Dodd; Michael L. Dominak; Karen L. Dominak; Edward J. Dorosz; Suzanne D. Dorosz; Jennifer Lynn Dorosz; Lauren Renee Dorosz; Kathryn Anne Dorosz; Frederick R. Drews; Dolores J. Drews; Bruce Richard Ehlers; Phyllis S. Ehlers; Steve H. Finch; Sarah D. Finch; James E. Fitzgerald; Donna R. Fitzgerald; Richard J. Forcelli; Joseph F. Garraty; Ann Marie Garraty; Robert L. Hackenberg; Marthena W. Hackenberg; Raymond L. Handlan; Scharlie B. Handlan; Patrick J. Hoover; Trudy M. Hoover; David C. Howard; Leslie L. Howard; Terrence F. Hunek; Denice D. Hunek; Clyde B. Johnston; Anthony Kane; Charlotte Kane; David N. Ken-

dall; Ruth S. Kendall; Walter A. Kinell; Charlotte H. Kinell; Janice M. Klimo; Gary L. Levit; Edward C. Levit; Arlene G. Levit; Glen E. Lindeman; Joan L. Lindeman; Jose L. Lizarribar; Carmen Lizarribar; Carol A. Lovell; Joseph F. Ludwikowski, Jr.; Lydia B. Ludwikowski; Joseph P. Martin; Malita A. Martin; Frederick J. McCarty; Rose M. McCarty; Edward J. McDonnell; Sophia McDonnell; John McGaley; Margaret M. McGaley; Ann McIntosh; Robert T. Mourad; Sally V. Mourad; Leon S. Nase; George P. Pealer; Lyndia R. Pealer; Vincent J. Petruzzi; Theresa C. Petruzzi; Edward M. Pollock; Claire D. Pollock; Earl Praml; Shirley J. Praml; Donald R. Rose; Reta Rose; Andrew J. Scharnagl; Carl G. Schatz; Frances S. Schatz; Roger P. Schurig; Jill M. Schrig; Robert W. Seegar; Glenn C. Seifried; Norma P. Seifried; Helen E. Soutter; Zivota Stevovich; Vera Stevovich; John H. Voelker; Adelaide T. Voelker; Thomas L. Waterson; Patricia A. Waterson, Plaintiffs–Appellants,

and

Robert Hunterton; Donna Hunterton; Judith L. Scharnagl; Christopher R. Seegar, Plaintiffs,

v.

RESOLUTION TRUST CORPORATION, as receiver for Southern Floridabanc Federal Savings and Loan Association; Federal Savings and Loan Insurance Corporation; Resolution Trust Corporation, Defendants–Appellees,

and

Stanley Waranch; Landmark Land Company of Louisiana, Incorporated; Dixie Management Corporation; Hilton Head Public Service District No. 1; Town of Hilton Head Island, Defendants.

No. 92–1671.

United States Court of Appeals, Fourth Circuit.

Argued March 3, 1993.

Decided Jan. 27, 1994.

**ARGUED:** Edward Mobley Woodward, Jr., Woodward, Leventis, Unger, Daves, Herndon & Cothran, Columbia, SC, for Appellants. Jeffery Isaac Ehrlich, Resolution Trust Corporation, Washington, DC, for Appellee. **ON BRIEF:** Michael P. Condon, Senior Counsel, Resolution Trust Corporation, Washington, DC; Glenn M. Young, James M. Cole, Rawle Andrews, Jr., Squire, Sanders & Dempsey, Washington, DC; William L. Pope, Pope & Rodgers, Columbia, SC, for Appellee.

Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## OPINION

ERVIN, Chief Judge:

Brady Development Company, Inc. and other lot owners in the Indigo Run Plantation (hereinafter "Brady") appeal the decision of the district court dismissing their complaint for lack of subject matter jurisdiction. The district court held that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183, §§ 101–1404, required Brady to exhaust its administrative remedies before proceeding with this action. As a result of Brady's failure to exhaust its administrative remedies, the district court held that it lacked subject matter jurisdiction to hear the case. Finding that the district court was correct in that determination, we affirm.

I

Brady raises five issues on appeal: (1) whether the district court erred in holding

that it did not have subject matter jurisdiction due to Brady's failure to exhaust administrative remedies; (2) whether the district court erred in holding that the Resolution Trust Corporation ("RTC") did not waive its right to require Brady to file administrative claims; (3) whether the district court gained jurisdiction because of the RTC's deposit of funds with the court; (4) whether the RTC was obligated as the successor to a savings and loan association to provide the amenities stated in Indigo Run Plantation's Declaration of Restrictions; and (5) whether the district court's decision amounted to an uncompensated taking under the Fifth Amendment.

## II

This case arises from the financial crisis and eventual bankruptcy of Hilton Head Corporation ("HHC"), a real estate development company, and of its Indigo Run Plantation real estate development, and the subsequent failure of Southern Floridabanc Savings & Loan Association. The Brady appellants are lot owners in the Indigo Run Plantation on Hilton Head Island; they purchased their lots either from the developer, HHC, or from individuals who originally had bought the lots from HHC.

The Indigo Run Plantation was developed subject to a master plan and a Declaration of Restrictions (the "Declaration") found in the deeds to each lot. The Declaration required the developer to build numerous amenities including water and sewer service, several golf courses, a racquet club, and a golf clubhouse. The original developer, HHC, experienced financial difficulties in the mid 1980s, and a change in ownership occurred before the project was finished, leaving many amenities incomplete.

In 1986 Southern Floridabanc Savings and Loan Association, a creditor of HHC, foreclosed on the unsold Indigo Run property. The developer and development went into bankruptcy. Soon thereafter, Southern Floridabanc experienced financial difficulties itself and was placed into receivership with the Federal Home Loan Bank Board, becoming Southern Floridabanc Federal. In May 1987, the bankruptcy trustee for the developer auctioned off the remaining unsold Indigo Run property located in the "inner core" of the development. Southern Floridabanc Federal successfully acquired fee simple title in the property, free and clear of any of the obligations of HHC.

In June 1989, Brady, as a landowner, brought suit in South Carolina state court seeking enforcement of the Declaration against Southern Floridabanc Federal and other individuals and corporations. Brady contended that as successors to the original developers, Southern Floridabanc Federal and other defendants were obligated to complete the amenities in the development as provided in the master plan.

On August 9, 1989, Congress enacted FIRREA, thereby abolishing the functions of the Federal Home Loan Bank Board and creating the RTC as its successor. Pursuant to FIRREA, the RTC became receiver for Southern Floridabanc Federal on October 5, 1989. As Southern Floridabanc Federal's receiver, the RTC acquired title to all remaining unsold property in the Indigo Run Plantation development. The RTC removed Brady's state court action to the district court once it became the receiver for Southern Floridabanc Federal.

On November 12, 1989 the RTC began its claims process for Indigo Run Plantation pursuant to FIRREA, which provided that the RTC had to publish notice to all creditors. The RTC published notice as required; the advertisement stated that the creditors had ninety days to present their claims. Brady, and the other claimants who had yet to join Brady's suit, failed to submit any proof of claim before the expiration of the ninety day period on February 10, 1990.

In July 1990, five months after the deadline for filing claims, the RTC met with Brady's counsel and counsel for a group of Indigo Run landowners. This was the first time that the RTC was formally made aware of the group of Indigo Run landowners who claimed that they were creditors of the development. The RTC was aware of the suit that Brady, as an individual landowner, previously had brought against Southern Floridabanc Federal based on the latter's prior removal action. Brady informed the RTC of

its decision to amend its complaint and add the numerous plaintiffs. The RTC agreed to accept amended service of process to reflect the addition and deletion of parties. Brady subsequently amended its complaint against the RTC as receiver for Southern Floridabanc Federal by adding the other Indigo Run landowners/creditors and asserting additional claims. Thus, the present group of plaintiffs/appellants was formed.

In October 1990, Brady moved to attach the proceeds from the impending sale of the remaining Indigo Run assets. The district court denied that motion. Brady, however, filed a notice of *lis pendens* against the Indigo Run property. In order to facilitate the sale of the property, the RTC agreed to substitute money as security for the *lis pendens*. A magistrate judge entered an order approving the substitution in May 1991. The RTC made an initial deposit of $2.7 million to serve as security and later supplemented it. The sale of the Indigo Run Plantation was eventually finalized and the development currently is being completed.

In July 1991, after being involved in the case with Brady for over one year, the RTC filed a motion for summary judgment on the ground that the district court lacked subject matter jurisdiction. The RTC asserted that the plaintiffs had failed to avail themselves of the administrative process required by FIRREA. Therefore, the RTC contended, FIRREA prohibited the district court from adjudicating the claim.

The district court granted the RTC's motion following oral argument. The court held that it lacked subject matter jurisdiction under section 1821(d)(13)(D) of FIRREA because Brady had failed to follow the administrative remedies required by FIRREA. This appeal ensued.

## III

### A

The central issue is whether litigants who have an action pending in court against a savings and loan that is subsequently placed in receivership (a pre-receivership claim) must avail themselves of FIRREA's administrative process in order to continue the ac-

tion in district court. This is a matter of first impression in this circuit.

Brady sets forth three theories for vesting the district court with jurisdiction. First, it asserts that FIRREA does not require a party to a pre-receivership action pending in court to file a separate administrative claim because the purpose of 12 U.S.C. § 1821(d)(3)(B)(i) is to give notice to the RTC and Brady's ongoing litigation against the RTC fulfills the notice requirement. Second, Brady contends that the deposit of money with the court as substitution for the real property vested the district court with subject matter jurisdiction. Third, Brady asserts that the RTC's acceptance of amended service of process amounted to a waiver of the administrative claims procedure.

As alternative theories, Brady argues that the jurisdictional bar found in section 1821(d)(13)(D) is inapplicable to pre-receivership claims. Brady asserts that the jurisdictional bar is inconsistent with the statute's grant to a claimant of freedom from prejudice in filing an action or in continuing an action (section 1821(d)(5)(F)(ii)) and the statute's ninety day stay provided in section 1821(d)(12)(A)(ii). Under this interpretation, the alleged internal conflict means a party with a pending court case cannot be required to file a separate claim. Brady further argues that the optional ninety day stay provision in section 1821(d)(12)(A)(ii) and the 180 day stay of section 1821(d)(5)(A)(i) are irreconcilable and overlapping. Therefore, Brady contends, if the court follows the RTC's interpretation of FIRREA, the statute's guarantee of safeguarding pre-existing rights when filing a claim would be hollow. 12 U.S.C. § 1821(d)(5)(F)(ii). We disagree with Brady's interpretation of the statute.

### B

FIRREA is a complex statute; to understand the issues addressed a brief overview of the statute is necessary. Congress enacted FIRREA, Pub.L. No. 101–73, 103 Stat. 183, §§ 101–1404, to establish a comprehensive scheme for efficiently administering all claims resulting from failed savings and loan institutions. The statute's purpose was to

"provide funds from public and private sources to deal expeditiously" with faltering and failed savings and loans in order to rebuild their financial foundations. Pub.L. No. 101–73, 103 Stat. 183, § 101. FIRREA establishes procedures for regulating savings and loans, including determining whether an institution is insolvent. It then sets forth a detailed series of rules under which all claims involving an insolvent institution are received and handled. 12 U.S.C. § 1821(d).

After a savings and loan is declared insolvent, the RTC must publish notice to the institution's creditors requiring them to present proof of their claims by a certain date not less than ninety days after the first date of publication of the notice. 12 U.S.C. 1821(d)(3)(B). Following the initial publication of notice, the RTC must publish notice to the creditors twice more. Second, the RTC is required to mail notice to creditors whose names are available in the failed savings and loan's records to present their claims. 12 U.S.C. § 1821(d)(3)(C). The failure of a creditor to file a claim by the date specified in the notice renders the claim permanently disallowed. 12 U.S.C. § 1821(d)(5)(C)(i).

Congress established an administrative scheme for processing the claims received after publication and mailing of notices. 12 U.S.C. §§ 1821(d)(5)–(14). After a claimant submits a claim to the RTC as mandated by section 1821(d)(3)(B)(i), the RTC has 180 days in which to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(i). The claim is essentially tolled during this 180 day administrative review. If the RTC disallows the claim or the 180 day period expires without RTC action, then the claimant has sixty days to seek further administrative determination or judicial relief. 12 U.S.C. § 1821(d)(6)(A). If the claimant fails to file suit or seek administrative review within sixty days of the denial or non-action, then the claim is deemed permanently disallowed. 12 U.S.C. § 1821(d)(6)(B). If judicial relief is chosen, review is by a *de novo* determination of the claim, not a review of the administrative disallowance of the claim. 12 U.S.C. § 1821(d)(5)(E).

■ To effectuate its goals of managing claims in an expeditious and efficient manner through an administrative process, Congress placed jurisdictional limits on the power of the federal courts to review matters involving failed savings and loans under FIRREA. Congress sought to ensure that all claims undergo the administrative claims process and are under the exclusive control of the RTC. To this end, section 1821(d)(13)(D) provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The precise jurisdictional limitations on the Article III courts mandated by FIRREA are determined by reading section 1821(d)(13)(D) in conjunction with the statute's allowance of an action within sixty days of a claim being denied as provided for in section 1821(d)(6)(A). Together these provisions mandate that the district court not hear any claim until it has been rejected by the RTC in its administrative review or until the 180 day administrative review period has expired. The statute further states that "the claimant may ... file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States...." 12 U.S.C. § 1821(d)(6)(A). Under this provision a claimant may continue a previously filed action after the administrative process has been completed if he had a suit pending against the savings and loan before the savings and loan was placed into receivership. Congress clearly envisioned that administrative and judicial review of claims could not take place simultaneously.

FIRREA contains a seemingly conflicting provision on the question of whether pre-receivership claims have to be submitted first to the RTC before they can be brought or

continued in an Article III court. The ambiguity arises because the statute provides that filing a proof of claim "with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." 12 U.S.C. § 1821(d)(5)(F)(ii). This means that a pre-receivership claim is essentially tolled or suspended rather than fully dismissed without prejudice during the administrative claims process. Section 1821(d)(5)(F)(ii), which provides that a filed claim will not prejudice a prior action, is subject to the ninety day stay provision of section 1821(d)(12)(A)(ii). That subsection provides that a request for a stay by the RTC "shall be granted" by the court and should not exceed "90 days, in the case of a receiver, in any judicial action or proceeding to which such institution is or becomes a party."

The seeming conflict arises because the ninety day stay that the RTC, as receiver, may request under section 1821(d)(12)(A)(ii) and the mandatory 180 day stay during which the RTC evaluates the claims submitted by creditors appear to overlap. The provisions seem incongruous because two different periods of time are created during which pending actions may be stayed leaving the district court without the authority to adjudicate a pending matter. A careful reading of the statute, however, reveals that the provisions are reconcilable.

## C

The optional ninety day stay period of sections 1821(d)(12)(A)(ii) & (B) provide that the "receiver may request a stay," thereby leaving the utilization of those sections within the discretion of the RTC. If the ninety day stay is not sought by the RTC, as in the instant case, the creditor's rights are not affected when he submits a claim to the RTC for administrative review. 12 U.S.C. § 1821(d)(5)(F)(ii). When the RTC does not request the ninety day stay, no conflict arises between the optional ninety day stay and the mandatory 180 day stay period provided by section 1821(d)(5)(A)(i). Congress's purpose for including this section was to facilitate the filing of administrative claims by ensuring that the pending litigation would not be com-

promised upon the filing of the claim. It is a safeguard provision should the claimant's demands not be granted by the RTC.

The optional ninety day stay provision is designed for the benefit of the RTC, not the creditor, and it serves a valuable purpose for the RTC. This section is applicable whether the RTC, as receiver, is the plaintiff or the defendant in pending litigation. When the RTC takes over a failed savings and loan, it also inherits that institution's pending litigation. The RTC's optional ninety day stay in section 1821(d)(12)(A)(ii) provides the RTC with the time to determine its status and examine the merits of pending litigation. When the RTC assumes the role of plaintiff in a pending action, the benefits of section 1821(d)(12)(A)(ii), enable it to assess the controversy and then to proceed with a course of action that would be most beneficial to the failed savings and loan.

When the RTC assumes the role of defendant, as in the instant case, section 1821(d)(12)(A)(ii) is equally applicable and beneficial. Because the RTC is initially unaware of its status with regard to pending litigation, the RTC's optional ninety day stay allows the RTC time to determine its status as defendant. Following that determination, the RTC then can initiate the administrative procedures which require it to publish notice to creditors and mandate that the creditors present claims to it pursuant to section 1821(d)(3)(B).

By the RTC availing itself of the optional ninety day stay, simultaneously with the publication of notice to creditors, it can delay pending actions until claims have been received. Upon receipt of the claims, section 1821(d)(5)(A) then creates the 180 day period during which the RTC must make a decision. While the claims received are under evaluation, sections 1821(d)(6)(A) and (d)(13)(D) forbid courts from continuing to exercise jurisdiction over pending claims against the RTC, as receiver, and permit judicial review only after the exhaustion of administrative remedies. During the administrative review all pre-receivership claims are tolled. Only after the RTC denies a claim or fails to act within 180 days after receiving the claim may

judicial review be sought or a previously filed action continued. 12 U.S.C. § 1821(d)(6)(A).

As the preceding explanation demonstrates, the 180 day administrative review period and the optional ninety day stay period, with its guarantee of no prejudice when filing a claim, are not mutually exclusive. One does not have to render the other superfluous. The 180 day administrative claim procedures are utilized after the expiration of the optional ninety day stay or when claims are received by the RTC following notice to the creditors. Each has a specific application depending upon the role the RTC assumes in pending litigation. These provisions uniquely serve the RTC's role as administrator of claims against the failed savings and loan and when the RTC has assumed the position of defendant in pending litigation.[1] Other courts that have addressed this problem have reached similar conclusions.

### D

■ The Tenth Circuit has squarely addressed the issue of whether a pre-receivership claim must be filed with the RTC. *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir.1991). The facts of that case are almost identical to those of the instant case. Mustang Partners had counterclaims pending against a savings and loan concerning a mortgage foreclosure. The RTC took over the savings and loan and was substituted as the party in the action. Mustang Partners failed to file an administrative claim as required by the statute, believing that the pending suit was sufficient notice. The district court granted the RTC's motion for summary judgment.

The Tenth Circuit upheld the lower court's ruling noting that the statute "clearly requires that each creditor file a claim." *Id.* at 106 (citing 12 U.S.C. § 1821(d)(3)(B)(i)). The court held that

> [i]n the event the claim is disallowed, the creditor can then file suit or *continue* to pursue a suit already filed. No interpretation is possible which would excuse this requirement for creditors with suits pending, or allow the filing of a suit to substitute for the claim process.

*Id.* The court also addressed the apparent incongruity that section 1821(d)(5)(F)(ii) creates by not prejudicing the right of any claimant who had already filed an action. The Tenth Circuit stated that it could not interpret this provision to support Mustang's claims that it was relieved from filing a claim. The court held "On the contrary, we conclude that Mustang's right to continue pursuing its pending lawsuit is dependent upon its compliance with FIRREA's claims provisions." *Id.* at 106. We endorse the Tenth Circuit's reasoning. The RTC followed the requisite statutory provisions, but Brady failed to comply with the statute.

The First Circuit, in *Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148 (1st Cir. 1992), also approved a similar result by deciding whether during the administrative review, a district court had to dismiss fully a pre-receivership claim, even though after the administrative claims procedure the claim could be refiled. The court held that the district court technically retained subject matter jurisdiction, explaining that the case or claim was tolled or suspended during the administrative process. The First Circuit further held:

> We rule that, where a claimant has been properly notified of the appointment of a federal insurer as receiver, 12 U.S.C. § 1821(d)(3)(B)-(C), and has nonetheless

---

1. FIRREA's legislative history also buttresses the position that a creditor must avail himself of the administrative process first. The House Banking, Finance and Urban Affairs Committee Report on FIRREA states that *"after* the exhaustion of streamlined administrative remedies, a claimant has a choice to either bring the claim de novo in the District Court...." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 418, *reprinted in* 1989 U.S.C.C.A.N. 86, 214 (emphasis added). The report, which incorporated the RTC by earlier reference, further states

the claims determination procedure ... enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly. The exhaustion requirements should lead to a large number of claims being resolved without resort to further procedures.... Thus the claim resolution procedures established in this action should allow the FDIC to quickly resolve many of the claims against failed institutions without unduly burdening the District Courts.

*Id.* at 215.

failed to initiate an administrative claim within the filing period, 12 U.S.C. § 1821(d)(3)(B)(i), the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court. *See* 12 U.S.C. § 1821(d)(5)(C)(i).

*Id.* at 1152.

 In the instant case the RTC followed all of the statutory requirements. Notice was properly and timely published. Brady, however, failed to submit notice of its claim. Therefore, pursuant to section 1821(d)(5)(C)(i) the claim is permanently disallowed. The alleged conflict within the statute, which Brady contends relieved it from filing an administrative claim, does not exist. The provisions can be reconciled and consequently there was no excuse for Brady's failure to follow the administrative procedures.[2]

Moreover, permitting this action to go forward would thwart FIRREA's purposes and permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute. The orderly process Congress enacted would be threatened if administrative remedies and judicial remedies were allowed to proceed simultaneously. Judicial review of claims before an administrative review by the RTC would render the administrative scheme established in 12 U.S.C. § 1821(d)(5)–(14) meaningless because creditors essentially could opt out of the administrative review. *See United Bank of Waco, N.A. v. First Republic Bank,* 758 F.Supp. 1166, 1168 (W.D.Tex.1991). Creditors must avail themselves of the statute in order to receive its benefits.

Brady's failure to exhaust the administrative process deprives the district court of jurisdiction. Exhaustion of administrative remedies is a requirement for efficiently administering the massive volume of claims. Numerous district courts have reached the same conclusion.[3] Pending actions are to be stayed until the outcome of the administrative process. Dual jurisdiction clearly is prohibited by the statute. Brady's first theory of jurisdiction therefore fails. We now turn to the alternative bases which Brady contends vested the district court with jurisdiction.

**IV**

Brady contends the district court was vested with subject matter jurisdiction by the deposit of money in an account with the court.

 Parties can neither create nor destroy subject matter jurisdiction. *City Nat'l Bank v. Edminsten,* 681 F.2d 942, 945 (4th Cir.1982). Therefore, the deposit cannot serve as a basis for subject matter jurisdiction when jurisdiction is prohibited by statute. The money was placed with the court as a substitute for the real property, which had been placed under the notice of *lis pendens,* so that the Indigo Run property could be sold. Section 1821(d)(13)(C) provides that "no attachment or execution may issue by any court upon assets in the possession of the receiver." Therefore, the district court was prohibited from exercising any control

---

**2.** Brady also urges this court to adopt the reasoning of *Marc Development, Inc. v. FDIC,* 771 F.Supp. 1163, 1165 (D.Utah 1991), which held that the 180 day stay provision would render the ninety day stay provision in section 1821(d)(12)(A)(ii) superfluous. We decline to do so. First, that district court incorrectly read the stay provisions of the statute. Second, *Marc Development* was issued one month before the Tenth Circuit came to the opposite conclusion in *Mustang Partners,* so *Marc Development* is no longer viable authority.

Brady further contends that we should heed the concerns expressed by the district court in *Tuxedo Beach Club Corp. v. City Federal Savings Bank,* 737 F.Supp. 18 (D.N.J.1990). In granting a stay for ongoing litigation during the adminis-

trative proceedings, the district court stated in a footnote that its decision may have been different if the action were further along in litigation. *Id.* at 19. The district court's concern over the length of time the action had been pending is immaterial. Congress did not provide an exception to the requirement that claims be filed for administrative determination based on the length of time the prior litigation had been underway; therefore, this court will not create such an exception.

**3.** *Perkins v. Farrah,* 791 F.Supp. 24, 25 (D.Me. 1992); *Guidry v. Resolution Trust Corp.,* 790 F.Supp. 651, 655 (E.D.La.1992); *Circle Industries, Div. of Nastasi–White, Inc. v. City Federal Savings Bank,* 749 F.Supp. 447, 455 (E.D.N.Y. 1990).

over the money which had been substituted for the property. This provision defeats Brady's second theory of subject matter jurisdiction.

## V

■ Brady's last assertion of subject matter jurisdiction is based on a waiver theory. Brady argues that the RTC waived its right to require administrative proceedings by consenting to the additional parties to the complaint and by accepting service of the amended complaint.

FIRREA clearly provides that the failure to submit a claim within the time period specified in the notice renders the claim permanently disallowed. 12 U.S.C. § 1821(d)(5)(C)(i). The date by which Brady had to file its administrative claim expired five months before the RTC agreed to accept process. The statute does not permit the RTC to accept a tardy claim for administrative review and the RTC's acceptance was meaningless. Section 1821(d)(5)(C)(ii) provides a very limited exception to the recovery bar provided for in section 1821(d)(5)(C)(i) and that limited exception is based on a failure to receive notice which is inapplicable to Brady.

In *Meliezer v. Resolution Trust Co.,* 952 F.2d 879, 883 (5th Cir.1992), the Fifth Circuit rejected a similar waiver argument. The *Meliezer* appellants contended that the district court erred in dismissing their claim for failure to exhaust administrative remedies because the RTC waived the requirement by failing to provide notice as required by the statute. The court rejected the waiver argument, stating that there was no statutory basis for that contention and dismissed the complaint for lack of jurisdiction. *Id.* at 883.

Moreover, we cited approvingly to *Glenborough New Mexico Associates v. Resolution Trust Corp.,* 802 F.Supp. 387 (D.N.M. 1992), a case applying section 1821(j) of FIRREA, in *In Re Landmark Land Co. of Oklahoma, Inc.,* 973 F.2d 283, 290 (4th Cir.1992). The *Glenborough* case is analogous to the instant case; there the plaintiffs' and RTC's representatives met to settle pending claims without the RTC raising the issue that the plaintiffs had failed to exhaust their administrative remedies. The RTC subsequently filed a motion to dismiss based on a failure to exhaust administrative remedies. The *Glenborough* court held that the RTC had not waived its right to assert lack of subject matter jurisdiction. The district court, quoting from an analogous case, stated:

> it is unfortunate that the government did not raise this question [earlier] so that the [plaintiff] would have had an opportunity to pursue the prerequisite administrative remedy in a timely manner. Although it may seem unjust to even consider the government's motion [to dismiss] at this point, the court has no choice in the matter. The administrative prerequisite to suit set forth in [the federal statute] has been strictly construed and is considered an absolute and unwaivable jurisdictional requirement ... this court has no power to excuse a condition precedent to federal jurisdiction regardless of the reason the condition was not met.

802 F.Supp. at 392–93 (quoting *Swizdor v. United States,* 581 F.Supp. 10, 11–12 (S.D.Iowa 1983)).

■ This statement is equally applicable to the instant matter. The RTC should not have accepted the amended complaint, but instead should have notified Brady that it failed to follow the administrative process. The doctrines of waiver and estoppel do not apply to subject matter jurisdiction determinations. Therefore, we reject Brady's final theory on which it contends the district court was vested with subject matter jurisdiction. Having rejected all of Brady's jurisdictional theories, we affirm the judgment of the district court.

## VI

Brady's remaining assignments of error cannot be addressed since we lack subject matter jurisdiction over them. We, therefore, affirm the district court's dismissal of this action.

*AFFIRMED.*