**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 93-2104

JAMES B. WHATLEY, ET AL.,

Plaintiffs-Appellants,

versus

RESOLUTION TRUST CORPORATION as
Receiver for Continental Savings,
a Federal Savings and Loan
Association,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Texas

( September 7, 1994 )

Before POLITZ, Chief Judge, GARWOOD and DUHÉ, Circuit Judges.

POLITZ, Chief Judge:

James Whatley, John Rowley, Philip Solomon, Myra Beth Whatley, and Dan Bensimon appeal the district court's dismissal of their claims against Resolution Trust Corporation and Continental Savings, AFSLA, for lack of subject matter jurisdiction. For the reasons assigned we vacate and remand for further proceedings.

<u>BACKGROUND</u>

On December 17, 1990 the plaintiffs filed suit in state court

in Travis County, Texas against Continental Savings, AFSLA for breach of fiduciary duty, breach of contract, and tortious interference with contractual relations. RTC, as conservator for Continental, intervened on January 16, 1991 and removed to federal court. The conservator was substituted as party defendant and requested and received a stay of proceedings pursuant to 12 U.S.C. § 1821(d)(12)(A)(i).[1] This stay expired in March of 1991.

Six months later, on August 16, 1991, the Office of Thrift Supervision declared Continental insolvent and appointed RTC as receiver. RTC filed pleadings to reflect its capacity as receiver but did not request a stay of proceedings, although part (ii) of subsection 1821(d)(12)(A) permits of such.[2] RTC initiated the administrative claims process by publishing notice in the Houston Chronicle directing Continental's creditors to submit their claims to RTC by November 18, 1991.[3] RTC did not publish this notice in Travis County where the plaintiffs lived and originally had filed their suit. Nor did RTC provide the plaintiffs with personal

---

[1]"After the appointment of a conservator . . . for an insured depository institution, the conservator . . . may request a stay for a period not to exceed -- (i) 45 days, in the case of any conservator, . . . in any judicial action or proceeding to which such institution is or becomes a party." 12 U.S.C. § 1821(d)(12)(A)(i).

[2]"After the appointment of a . . . receiver of an insured depository institution, the . . . receiver may request a stay for a period not to exceed . . . (ii) 90 days, in the case of any receiver, in any judicial action or proceeding to which such institution is or becomes a party." 12 U.S.C. § 1821(d)(12)(A)(ii).

[3]See 12 U.S.C. § 1821(d)(3)(B), requiring that such notice be published.

notice of the filing procedures and deadline as required by 12 U.S.C. § 1821(d)(3)(C).[4] Unaware of the procedure for filing an administrative claim, on September 27, 1991 the plaintiffs sent RTC a letter advising of the claims made in their pending lawsuit.

RTC, obviously fully cognizant of the pending lawsuit, made no attempt whatsoever to communicate with plaintiffs or their counsel. Instead, on January 15, 1992 -- after the time for filing administrative claims had expired -- RTC filed a motion to dismiss the plaintiffs' complaint for failure to exhaust administrative remedies. In response the plaintiffs asserted that: (1) the administrative claims process of the Financial Institutions Reform and Recovery Enforcement Act of 1989 (FIRREA) does not apply to lawsuits filed before the appointment of the receiver; (2) the receiver's failure to give the plaintiffs proper notice of the claims process exempted them from the exhaustion requirement; and (3) the plaintiffs notified the receiver of their claim by the September 1991 letter.

The district court initially denied RTC's motion to dismiss. RTC then filed a motion for summary judgment contending that the

---

[4]     The receiver shall mail a notice similar to the notice published under [subsection B] at the time of such publication to any creditor shown on the institution's books --
        (i) at the creditor's last address appearing in such books; or
        (ii) upon the discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.

12 U.S.C. § 1821(d)(3)(C) (emphasis added).

3

plaintiffs' unsecured claims were prudentially moot because the value of the secured claims exceeded the value of the bank's assets. Before ruling on the summary judgment motion, however, the district court reversed its position on the motion to dismiss, vacated its prior orders, and dismissed the plaintiffs' case for lack of subject matter jurisdiction. The plaintiffs timely appealed.

## ANALYSIS

We review dismissals for lack of subject matter jurisdiction *de novo*,[5] applying the same standard as that applied by the district court. The district court determined that the plaintiffs' failure to file an administrative claim with RTC deprived the court of jurisdiction. Concluding that FIRREA provides otherwise with respect to lawsuits filed before the receivership, we vacate and remand for further proceedings.

### Pre- Versus Post-receivership Claims

We noted the differences between pre- and post-receivership claims in **Carney v. Resolution Trust Corporation**.[6] Because subject matter jurisdiction is tested as of the time of the filing of the complaint,[7] district courts presiding over actions properly filed prior to the appointment of a receiver continue to be vested with

---

[5]**Matter of Bradley**, 989 F.2d 802 (5th Cir. 1993).

[6]No. 93-1329, 1994 WL 126745 (5th Cir. April 14, 1994).

[7]**Carney**.

4

jurisdiction.[8]  The situation differs when the receiver is appointed before the filing of an action against a failed financial institution.  As explained in **Meliezer v. Resolution Trust Company**,[9] "FIRREA contains no provision granting federal jurisdiction to claims filed after a receiver is appointed but before administrative exhaustion."[10]

By contrast, several sections of FIRREA provide that federal jurisdiction over pre-receivership claims continues after the appointment of a receiver.  Subsection 1821(d), which governs the powers and duties of a receiver, states:

> Except as otherwise provided in this subsection,[11] no court shall have jurisdiction over --
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver . . .; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.[12]

Paragraph (5)(F)(ii) of the subsection provides otherwise, stating that "[s]ubject to paragraph (12), the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the

---

[8]See **Rosa v. Resolution Trust Corp.**, 938 F.2d 383 (3d Cir.), cert. denied, 112 S.Ct. 582 (1991); see also **Praxis Properties, Inc. v. Colonial Sav. Bank, S.L.A.**, 947 F.2d 49 (3d Cir. 1991).

[9]952 F.2d 879 (5th Cir. 1992).

[10]**Id.** at 882.

[11]"This subsection" refers to section 1821(d) as a whole. **Marquis v. F.D.I.C.**, 965 F.2d 1148 (1st Cir. 1992) (*en banc*).

[12]12 U.S.C. § 1821(d)(13)(D).

receiver."[13]  Paragraph (12) explains that after its appointment, a receiver "may request a stay for a period not to exceed . . . (ii) 90 days, . . . in any judicial action or proceeding to which such institution is or becomes a party."[14]

This circuit, and the others addressing the issue, have interpreted these and other paragraphs[15] of subsection 1821(d) to mean that a separate scheme exists for the disposition of lawsuits filed pre-receivership.[16]  Those claims, based on valid federal jurisdiction when filed, may be affected only through the stay provision detailed in paragraph (12)(A)(ii).  This legislatively-created framework strikes a fair balance between the goals of efficiency and expediency underlying FIRREA and the interests of creditors who, having invoked the proper procedures for protecting their rights, have expended time, money, and energy in properly asserting their claims.

Pre-receivership Claims and Exhaustion

There is an added odious dimension when the receiver, with

---

[13]12 U.S.C. § 1821(d)(5)(F)(ii).

[14]12 U.S.C. § 1821(d)(12)(A)(ii).

[15]For example, paragraphs (6)(A) and (8)(C) permit a claimant to continue a suit filed before the appointment of a receiver after its administrative claim has been disallowed.  12 U.S.C. § 1821(d)(6)(A) and (8)(C).

[16]See **Brady Development Co. v. Resolution Trust Corp.**, 14 F.3d 998 (4th Cir. 1994); **Carney; Marquis; Praxis; Rosa**; see also **F.D.I.C. v. Glynn**, 1993 WL 413958 (N.D.Ill. October 15, 1993); **Lanigan v. Resolution Trust Corp.**, 1992 EL 130075 (N.D.Ill. June 9, 1992); **Guidry v. Resolution Trust Corp.**, 790 F.Supp. 651 (E.D.La. 1992); **Coston v. Gold Coast Graphics, Inc.**, 782 F.Supp. 1532 (S.D.Fla. 1992).

full knowledge of the pending lawsuit, foregoes a request for a stay and waits until the time for the administrative claims process has expired to appear in court requesting dismissal because of the plaintiffs' supposed failure to exhaust administrative remedies. In the eyes of the claimant -- especially one who receives no actual notice of the administrative process -- his lawsuit is awaiting disposition: the receiver, having intervened and been substituted as party defendant, ostensibly joins him in awaiting a hearing on the merits. In reality, however, the receiver lies in ambush, awaiting expiration of the administrative deadline so that it may dispose of the claim without consideration of its merits. We neither find nor assign any such intent to Congress in its enactment of FIRREA.

Congress created a separate scheme for the handling of pre-receivership actions, giving the receiver the privilege, but not the duty, to request a stay of judicial proceedings so that it might first consider the pending claim administratively. Neither a request for a stay nor the failure to request a stay deprives the district court of jurisdiction. Rather, if the receiver requests a stay, the court will defer action temporarily. If the receiver does not timely seek a stay, the judicial action will routinely proceed. This does not mean that the judicial process runs concurrently with the administrative remedy.[17] Congress has given the receiver the option to either request a stay, and proceed

---

[17]See **Carney** (allowing simultaneous pursuit of administrative and judicial remedies thwarts the congressional purpose for enacting FIRREA); accord **Brady.**

administratively based on the claimant's complaint or any substitute or supplemental filing it may request, <u>or</u> forego the privilege of requesting a stay and thus proceed judicially. Should the receiver choose to proceed administratively, it must request the stay within 90 days of its appointment;[18] thereafter no stay may be sought and the judicial action is to proceed.

As in any case of statutory interpretation, we look to the plain language of the statute, reading it as a whole and mindful of the linquistic choices made by Congress. The language of subsection 1821(d) is clear:  "The Corporation <u>may</u>, as receiver, determine claims in accordance with the requirements of this subsection."[19]  "After . . . appointment . . . [as] receiver for an insured depository institution, . . . [it] <u>may</u> request a stay for a period not to exceed . . . 90 days, . . . in any judicial action or proceeding to which such institution is or becomes a party."[20] The term "may" is permissive; it neither indicates nor requires an exclusive means of action -- it is discretionary.[21]  Paragraph

---

[18]<u>See</u> **Praxis** (analyzing the legislative history and the language of 12 U.S.C. § 1821(d)(12)(A) and concluding that Congress intended that the receiver request the stay within the first 90 days of its appointment).  Otherwise, the receiver would have "carte blanche to stay a judicial proceeding at any time it feels it needs a 90-day break from the rigors of litigation." **Id.** 947 F.2d at 69.  We agree with the analysis of our colleagues on the Third Circuit that the privilege to request a stay must be restricted to the first 90 days after appointment to prevent abuse.

[19]12 U.S.C. § 1821(d)(3)(A) (entitled "Authority of receiver to determine claims") (emphasis added).

[20]12 U.S.C. § 1821(d)(12)(A)(ii) (emphasis added).

[21]**Rose v. Rose**, 481 U.S. 619 (1987) (Congress' use of word "may" does not imply exclusivity; it establishes only a

(3)(A) allows, but does not require, the receiver to determine claims in accordance with FIRREA;[22] paragraph (12)(A)(ii) grants the receiver the privilege, should it choose to proceed administratively, to request a stay of judicial proceedings.[23] Neither provision is mandatory. The use of the term "shall" in other paragraphs of subsection 1821(d) supports this analysis.[24]

The language of subsection 1821(d), and its legislative history, lends support to our conclusion. Absent a request for a stay pursuant to paragraph (12)(A)(ii), no provision of the subsection exists by which the judicial proceeding may be stayed. As congressional goals of efficiency and expediency would be prejudiced if administrative and judicial processes were allowed to proceed simultantously,[25] Congress obviously intended to grant the receiver the option to use initially either the administrative or judicial mechanism. If Congress had intended the administrative

---

discretionary power); accord **F.D.I.C. v. McSweeney**, 976 F.2d 532 (9th Cir. 1992), cert. denied, 113 S.Ct. 2440 (1993); **F.D.I.C. v. Canfield**, 967 F.2d 443 (10th Cir.), cert. dismissed, 113 S.Ct. 516 (1992); **Resolution Trust Corp. v. Lightfoot**, 938 F.2d 65 (7th Cir. 1991).

[22]See also 12 U.S.C. § 1821(d)(6)(A)(i) (the receiver may opt out of the administrative process after an administrative claim is filed by refusing to act on the claim for 180 days at which point the claimant is free to proceed in federal court).

[23]See also **Brady** (concluding stay provision of paragraph (12)(A)(ii) is optional and discretionary).

[24]See e.g., 12 U.S.C. § 1821(d)(5)(A)(i) (establishing time period in which receiver shall determine administrative claims); (8)(A) (receiver shall establish an expedited claims process for certain claimants); (15)(A) and (B) (receiver shall make an accounting).

[25]See **Carney**; see also **Brady**.

procedure to be exclusive for pre-receivership actions, it would not have provided for the permissive stay.  It would have been a simple matter to provide for an automatic, mandatory stay of all pending judicial actions.[26]  This Congress did not do; this we will not do under the guise of statutory interpretation.[27]

Finally, the purposes of FIRREA and basic notions of fair play militate against the procedure followed by the receiver -- awaiting expiration of the time allowed for initiating claims and then moving to dismiss the pending judicial actions.  FIRREA seeks the efficient and expedient handling of claims.[28]  Efficiency and expediency, however, are not justifications for vitiating the primary purpose of FIRREA.  Congress intended to establish a scheme for fairly adjudicating claims against failed financial institutions.  It did not structure a system for the sandbagging of valid claims.  The statute is not to be used as an easy means of avoiding consideration of claims on their merits.  As demonstrated by the special provisions governing pre-receivership suits, Congress had the rights of claimants in mind when it enacted FIRREA.  RTC may not distort the provisions designed to facilitate the processing of claims into a tool for subverting the right of claimants to present their claims on the merits.

---

[26]See e.g., 11 U.S.C. § 362(a)(1) (imposing automatic stay in the bankruptcy context).

[27]**Matter of Meyerland Co.**, 960 F.2d 512 (5th Cir. 1992), cert. denied, 113 S.Ct. 967 (1993).  See also **Lightfoot; McSweeney; Canfield.**

[28]See **Brady; Carney; Marquis; Meliezer.**

10

We therefore hold that with regard to actions filed before the receivership, the receiver may opt either for the judicial route, by allowing the action to continue, or it may choose the administrative process, by moving for a stay within 90 days of its appointment.[29] In the instant case, RTC did not timely request a stay of the plaintiffs' pre-receivership proceeding and it is therefore deemed to have determined to proceed with the litigation in federal court.

The decision of the district court is VACATED and the case is REMANDED for further proceedings consistent herewith.

DUHÉ, Circuit Judge, concurring:

I agree that the receiver's failure to invoke the optional stay simultaneously with the giving of notice to creditors means that the pending action was not suspended under § 1821(d)(12) but continued under § 1821(d)(5)(F)(ii). (Paragraph (5)(F)(ii) recognizes that a claimant's right to continue a pre-appointment law suit is not prejudiced unless the receiver requests a stay under paragraph (12)). A plaintiff whose suit continues cannot have his claim disallowed for failure to continue his suit.

I write separately to express my opinion that RTC's failure to mail the notice required under § 1821(d)(3)(C) is also dispositive, for two reasons.

First, the failure to mail notice left the receiver without

---

[29]In so holding, we recognize that other circuits are not in accord. See **Brady Development Co. V. Resolution Trust Corp.**, 14 F.3d 998 (4th Cir. 1994); see also **Bueford v. Resolution Trust Corp.**, 991 F.2d 481 (8th Cir. 1993); **Resolution Trust Corp. v. Mustang Partners**, 946 F.2d 103 (10th Cir. 1991).

11

the power to determine the plaintiffs' claim administratively and, therefore, exempted plaintiffs from the exhaustion requirement notwithstanding <u>Meliezer</u>.  In <u>Meliezer</u>, a suit filed against the receiver post-appointment, the receiver's failure to mail notice upon learning the identity of the claimant (under subsection (d)(3)(C)(ii)) did not relieve the claimant from the obligation to exhaust administrative remedies, because subsection (d)(3)(C) does not impose "a consequence for failure of compliance."[30]  The <u>Meliezer</u> claimant was a debtor of the institution, not shown on the institution's books as a creditor, and the claim became known to the receiver only upon the filing of the suit after the bar date for filing claims had passed.  The plaintiff could have filed an administrative claim belatedly at the time of its complaint which the receiver would likely have disallowed.[31]  I would not extend the

---

[30]  <u>Meliezer</u>, 952 F.2d at 883.  Unlike the <u>Meliezer</u> panel, I find sound statutory basis for the argument that the receiver's very authority to determine claims hinges on its compliance with the notice requirements.  <u>See</u> § 1821(d)(3)(A) (receiver may determine claims in accordance with "requirements" of § 1821(d)); § 1821(d)(3)(B) (receiver "shall" publish notice); § 1821(d)(3)(C) (receiver "shall" mail a similar notice to creditors shown on the institution's books and claimants who become known); <u>see also</u> <u>Meliezer</u>, 952 F.2d at 881 (recognizing that under § 1821(d)(3) it is the new claims procedure which "gives the Receiver . . . authority to review claims"); <u>id.</u> at 880 (recognizing that by publishing the notice and establishing a claims deadline the RTC "implement[s] the administrative claims process"); <u>Brady Dev. Co. v. RTC</u>, 14 F.3d 998, 1001 (4th Cir. 1994) (noting that RTC "began its claims process" by publishing the required notice).  Because the notice provisions are mandatory under paragraph (3)(B) & (C), I consider them a "requirement" of subsection (d).  I also interpret paragraph (3)(A) as conferring authority to determine claims only if the receiver satisfies such "requirements." Accordingly, the statutory scheme does provide a consequence for the failure of compliance with the notice requirement.

[31]  <u>See</u> § 1821(d)(5)(C)(i) (providing for final disallowance of claims filed after the date given in the published notice, unless clause (ii) applies, <u>i.e.</u>, claimant does not have notice of

holding of <u>Meliezer</u> to a creditor suit filed against the institution before appointment of the receiver. In the case of a claimant with a suit pending when the receiver is appointed, I would hold that if the receiver fails to give notice of the claims-filing deadline as required under § 1821(d)(3)(C), it lacks authority to determine the claim under § 1821(d)(3)(A).

Chief Judge Politz's opinion recognizes, at least implicitly, that the receiver's notice to a claimant with a suit pending against the receiver is important. I consider his reference to the receiver's "request [for a] substitute or supplemental filing" an allusion to the receiver's duty to notify a plaintiff of any administrative filing requirements. Thus if the receiver requests a stay of a suit without requesting from the claimant a "substitute or supplemental filing," the receiver must consider the claim administratively based solely on the complaint. The mailing of notice under § 1821(d)(3)(C) would constitute such a request for substitute or supplemental presentation of the claim at the address given in the notice.

Second, I would hold that the Due Process Clause requires mailed notice to a claimant known to the receiver by virtue of his having filed suit against the institution before the appointment of the receiver. For such claimants, publication of notice (which is sufficient for unknown claimants[32]) is constitutionally infirm. <u>See</u>

---

the appointment of the receiver in time to file a claim before the bar date but files in time to permit payment).

[32] <u>Meliezer</u> is again distinguishable. This Court never considered the effect of the constitutional requirement of due

13

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 317-20, 70 S. Ct. 652 (1950) (holding that notice by newspaper publication, which is sufficient for unknown or missing claimants, is unconstitutional with respect to known persons whose whereabouts are also known); Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 798-800, 103 S. Ct. 2706, 2711-12 (1983) (requiring under the Due Process Clause that a proceeding affecting the property of a party whose name and address are reasonably ascertainable be preceded by personal service or mailed notice).  These fundamental principles of due process dictate that a claimant known because of a pending law suit enjoys the protection of § 1821(d)(3)(C) (mailed notice to creditors shown on the institution's books or to claimants who become known) as a constitutional minimum.

I nevertheless concur.  Regardless of the adequacy of the notice given by the receiver under either the constitution or FIRREA itself, the receiver must also request a stay to suspend judicial action in a case filed pre-appointment.  Otherwise, the jurisdiction of the court continues.

---

process on the statutory notice provisions in that case.  The Meliezer plaintiff apparently received constitutionally adequate notice via the newspaper publication.  Meliezer at 883 n.7.  Until suit was filed after the receiver was appointed and indeed after the bar date had passed, the Meliezer plaintiff was not a known claimant and was known only as a debtor of the institution. Id. at 880.

14