858

TEERLING LANDSCAPING, INC., Plaintiff-Appellant, v. CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.*, Defendants-Appellees.

Second District    No. 2—94—0496

Opinion filed April 20, 1995.

Benjamin Daidone, of Daidone & Daidone, of Niles, for appellant.

Estelle Linn, of Chicago, for appellees Irving Federal Bank for Savings and Resolution Trust Corporation.

Beth V. Schreiber-Murray and Susan E. Woods, both of Chicago, for appellees Chicago Title Insurance Company and Old Kent Bank.

Kim M. Casey, of Holmstrom & Kennedy, of Rockford, for appellee First Federal Savings & Loan Association of Rockford.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Teerling Landscaping, Inc., appeals from an order of the circuit court of Du Page County dismissing counts I and III of plaintiff's amended complaint. Plaintiff initiated this lawsuit against numerous defendants to foreclose a mechanic's lien. Only three of the named defendants are appellees in this appeal. They are: Resolution Trust Corporation (RTC), receiver and substitute defendant for Irving Federal Savings & Loan Association, n/k/a Irving Bank for Savings (Irving Federal); Old Kent Bank (Old Kent); and First Federal Savings & Loan Association of Rockford, n/k/a First Federal Bank F.S.B. (First Federal). The other named defendants have either been defaulted or have not submitted pleadings.

Plaintiff's amended complaint contained three counts. Count I sought to foreclose a mechanic's lien against all three of the appellees. Count II was an action at law against only the property owners and is not part of the appeal. Count III alleged a statutory remedy against only RTC.

The trial court dismissed counts I and III as to RTC and count I as to Old Kent and First Federal. The court determined that there was no just reason for delaying enforcement or appeal of its order under Supreme Court Rule 304(a) (157 Ill. 2d R. 304(a)).

As to RTC, plaintiff contends that the trial court erred in granting RTC's motion to dismiss counts I and III of the amended complaint because (1) there were disputed questions of material fact which should have precluded granting the motion to dismiss; (2) plaintiff was denied due process; and (3) plaintiff was entitled to statutory damages.

As to Old Kent and First Federal, plaintiff contends that the trial court erred in granting their motion to dismiss count I of the amended complaint because, contrary to the trial court's determination, the lien's legal description of the property was sufficient and the lien did not have to be apportioned.

Before addressing the merits of plaintiff's contentions as to RTC, we must resolve a jurisdictional question. RTC contends that the circuit court lacked subject-matter jurisdiction to adjudicate plaintiff's case against it because plaintiff failed to exhaust administrative remedies which were a mandatory prerequisite for subject-matter jurisdiction.

Construing certain subsections of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) (Pub. L. 101—73, 103 Stat. 183 (codified in scattered sections of 12 U.S.C. (Supp. II 1990))), RTC contends that FIRREA established an exclusive and mandatory administrative procedure under which any claimant against a receiver of a failed thrift must file an administrative claim

and obtain a determination of the claim as a prerequisite to the exercise of jurisdiction by any court on the matter. RTC argues that plaintiff failed to exhaust administrative remedies because it did not file an administrative claim and consequently the trial court was without subject-matter jurisdiction.

■ RTC correctly states the general rule that FIRREA requires a claimant against a receiver for a failed thrift to file an administrative claim as provided in FIRREA or else no court has jurisdiction to adjudicate the dispute. (See, *e.g.*, *Resolution Trust Corp. v. Mustang Partners* (10th Cir. 1991), 946 F.2d 103, 106.) However, there is an exception to the general rule for pre-receivership cases, *i.e.*, those where the claimant files its action against the thrift in a court prior to the appointment of the receiver for the thrift. (*Whatley v. Resolution Trust Corp.* (5th Cir. 1994), 32 F.3d 905, 908.) In pre-receivership cases where the receiver has not mailed the claimant personal notice of the administrative claim procedure and has not timely requested a stay of the judicial proceedings, the general rule does not apply. (*Greater Slidell Auto Auction, Inc. v. American Bank & Trust Co.* (5th Cir. 1994), 32 F.3d 939, 941.) In such pre-receivership cases, the receiver is deemed to have determined to proceed with the previously filed litigation and therefore the court conducting those proceedings has jurisdiction to adjudicate the dispute notwithstanding the claimant's failure to file an administrative claim. *Whatley*, 32 F.3d at 910.

There are several persuasive reasons for the pre-receivership exception. The exception for pre-receivership cases comports both with the purposes of FIRREA and basic notions of fair play. Without the exception, a receiver might simply await the expiration of the time allowed by FIRREA for initiating administrative claims and then move to dismiss pending judicial actions on jurisdictional grounds. (*Whatley*, 32 F.3d at 909.) Moreover, the failure to provide notice by mail in pre-receivership cases violates a claimant's right to due process under FIRREA. (*Greater Slidell Auto Auction*, 32 F.3d at 942.) Finally, the exception is in accord with *Armstrong v. Resolution Trust Corp.* (1993), 157 Ill. 2d 49, where our supreme court determined that there was "no incompatibility between State-court jurisdiction of pre-receivership claims and Federal interests" (157 Ill. 2d at 60). For these reasons, we elect to follow the cases establishing the pre-receivership exception.

This case is a pre-receivership case in which the exception applies. Plaintiff filed its action to foreclose its mechanic's lien well before RTC was appointed receiver for Irving Federal. RTC has neither mailed plaintiff notice of the administrative claims procedure

nor requested a stay of the State court proceedings. RTC argued below that its motion to dismiss counts I and III constituted notice to plaintiff of the administrative claims procedure. However, RTC has not renewed this argument on appeal. In any event, the argument is unpersuasive because the notice given to plaintiff by RTC's motion to dismiss does not satisfy the FIRREA requirements for notice by mail (12 U.S.C. § 1821(d)(3)(C) (Supp. V 1993)). Consequently, the trial court had jurisdiction even though plaintiff did not file an administrative claim under FIRREA.

We turn now to the merits of plaintiff's appeal with respect to RTC. We will first set out the relevant facts as gleaned from the record.

In 1989, plaintiff entered a landscaping contract with owners of property to provide landscaping material and labor on the property. The trustee of a land trust which owned the property and the land trust beneficiaries had previously obtained a mortgage on the property from Irving Federal.

The landscaping contract required plaintiff to perform services and furnish material to improve the property at a price of $135,000. Plaintiff alleged that it completed the contract requirements and also furnished extra work and material in the amount of $24,435, for a total amount owed to it under the contract of $159,435. Plaintiff claimed that it was paid only $127,944 of the amount owed, leaving a balance due of $31,491 plus interest since the date the work was completed.

In 1988, Irving Federal and the land owners and land trust beneficiaries entered into an escrow agreement. The escrow agreement named an escrowee to disburse mortgage funds provided by Irving Federal for contractors. Before funds could be disbursed, the escrow agreement required, *inter alia*, a sworn statement from the owner disclosing the contracts entered into by the owner, the names and addresses of the contractors, the amounts of the contracts, the amounts paid on the contracts, and balances due. Irving Federal was to make inspections to verify that the work had been completed before disbursing the funds.

Plaintiff alleged that at least 28 sworn statements showing that it was a contractor, its name, address and contract status were submitted to Irving Federal pursuant to the escrow agreement. Plaintiff also alleged that Irving Federal made inspections and disbursed funds after receiving each of the sworn statements.

On October 8, 1991, Irving Federal commenced a mortgage foreclosure action in the circuit court naming "nonrecord claimants" as a party defendant but not naming plaintiff as a party defendant.

Plaintiff continued supplying material and labor on the property until plaintiff completed its work under the landscaping contract on December 2, 1991. On December 3, 1991, Irving Federal recorded a notice of foreclosure on the mortgage.

On February 7, 1992, Irving Federal filed an affidavit for service by publication pursuant to section 2—206 of the Code of Civil Procedure (Code) (735 ILCS 5/2—206 (West 1992)) and section 15—1502(c) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15—1502(c) (West 1992)). Irving Federal filed the affidavit to obtain jurisdiction in the mortgage foreclosure action over, *inter alia*, nonrecord claimants. On the same date, judgment of foreclosure was entered. On March 24, 1992, the foreclosed property was sold at a sheriff's sale. The trustee of the land trust subsequently conveyed the property to a new owner by sheriff's deed.

On March 31, 1992, plaintiff recorded its mechanic's lien claim. On May 27, 1992, plaintiff filed suit to foreclose its mechanic's lien. After RTC, as receiver for Irving Federal, was substituted as defendant for Irving Federal, RTC moved to dismiss counts I and III of plaintiff's amended complaint. Count I sought to foreclose the mechanic's lien against RTC and others. Count III claimed a statutory remedy against RTC.

At the hearing on the motion to dismiss, the trial court stated that Irving Federal properly notified plaintiff by publication under section 15—1502 of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15—1502 (West 1992)) which, in the court's view, took precedence over the more general provisions for notice by publication in section 2—206 of the Code (735 ILCS 5/2—206 (West 1992)). The court further reasoned that because plaintiff had been properly notified, the subsequent judgment of foreclosure was an affirmative defense available to RTC with regard to count I.

Plaintiff first argues that the trial court erred in granting RTC's motion to dismiss count I of the complaint because there was a question of fact as to whether Irving Federal was aware that plaintiff was a creditor when Irving Federal filed its affidavit to publish notice as to nonrecord claimants. Plaintiff asserts that its complaint alleged facts which Irving Federal never denied by affidavit or evidence and that the alleged facts show that Irving Federal should have known that plaintiff was a likely creditor. Plaintiff argues that if these alleged facts were determined to be true then Irving Federal's judgment of foreclosure was void as to plaintiff because Irving Federal would have been required to give plaintiff actual notice of the mortgage foreclosure action before the judgment of foreclosure could be effective against plaintiff.

RTC replies that it was not necessary to contest the facts alleged by plaintiff because they were not material to the propriety of the notice given to plaintiff under the Mortgage Foreclosure Law. RTC maintains that plaintiff was a nonrecord claimant under the Mortgage Foreclosure Law and that notice to plaintiff as a nonrecord claimant by publication was sufficient.

■ Section 15—1210 of the Mortgage Foreclosure Law defines "nonrecord claimant" as follows:

" 'Nonrecord claimant' means any person (i) who has or claims to have an interest in mortgaged real estate, (ii) whose name or interest, at the time a notice of foreclosure is recorded in accordance with Section 15—1503, is not disclosed of record either (1) by means of a recorded notice or (2) by means of a proceeding which under the law as in effect at the time the foreclosure is commenced would afford constructive notice of the existence of such interest and (iii) whose interest falls in any of the following categories: *** (4) mechanics' lien claim." 735 ILCS 5/15—1210 (West 1992).

■ Under this definition, plaintiff was clearly a nonrecord claimant in the mortgage foreclosure case filed by Irving Federal. Plaintiff claimed an interest in the mortgaged property by virtue of a mechanic's lien. However, plaintiff had not yet recorded its mechanic's lien claim when Irving Federal recorded its notice of foreclosure on December 3, 1991. Plaintiff did not record its mechanic's lien claim until March 31, 1992. Thus, plaintiff's name and interest were not disclosed of record at the time Irving Federal recorded its notice of foreclosure. Nor has plaintiff asserted that a proceeding under the law in effect at the time the foreclosure commenced afforded constructive notice of the existence of its interest in the property.

After defining a nonrecord claimant, section 15—1210 further provides that "[t]he classification of any person as a nonrecord claimant under the foregoing definition shall not be affected by any actual notice or knowledge of or attributable to the mortgagee" (735 ILCS 5/15—1210 (West 1992)). Thus, under the plain language of section 15—1210, even if there was actual notice or knowledge of plaintiff's interest by Irving Federal it would not affect plaintiff's classification as a nonrecord claimant under the Mortgage Foreclosure Law.

■ Section 15—1502(c) of the Mortgage Foreclosure Law sets out the procedures for terminating the rights of nonrecord claimants. Section 15—1502(c) provides as follows:

"(c) Terminating Rights of Nonrecord Claimants. (1) Contents of Affidavit. A party in a foreclosure seeking to bar and terminate the interest in the mortgaged real estate of nonrecord claimants

shall file in the office of the clerk of the court in which such action is pending an affidavit stating (i) the names and respective present or last known places of residence of such nonrecord claimants, or (ii) that the existence, names or the present or last known places of residence, or both, of such nonrecord claimants are unknown as of that time to the party and to the party's attorney. Such affidavit, with respect to names and places of residence, may be made upon information and belief of the affiant. The affidavit need not state that inquiry has been made to ascertain the names or present or last known places of residence of such nonrecord claimants, and no such inquiry need be made.

(2) Notice. At least 30 days prior to the entry of a judgment of foreclosure, any person identified in the affidavit described in paragraph (1) of subsection (c) of Section 15—1502 shall be given a notice of the foreclosure complying with the requirements of Section 15—1503 by the party filing the affidavit. Such notice shall be given in the manner and upon the terms and conditions set forth in Sections 2—206 and 2—207 of the Code of Civil Procedure, except that (i) such notice with respect to nonrecord claimants whose names are not set forth in such affidavit, instead of being addressed to such nonrecord claimants by name, may simply be addressed to 'Nonrecord Claimants' and (ii) when the mortgaged real estate is located within a municipality in a county with a population under 2,000,000, publication shall be in a newspaper generally circulated in such municipality. Such notice shall have the same effect with respect to all nonrecord claimants designated therein as though a notice containing their names had been published in accordance with Sections 2—206 and 2—207 of the Code of Civil Procedure and may be combined with any notice published against parties defendant in the same action pursuant to those Sections." 735 ILCS 5/15—1502(c) (West 1992).

Here, Irving Federal filed an affidavit for service by publication as to nonrecord claimants. The affidavit stated, in relevant part, the following:

"The undersigned certifies the following:

1. This Affidavit is made pursuant to the provisions of *Illinois Revised Statutes*, Ch. 110, Secs. 2—206 and 15—1502(c), for the purpose of obtaining jurisdiction of the above court over defendants, UNKNOWN OWNERS and NONRECORD CLAIMANTS of the real estate described in the complaint filed herein and the following defendants:

2. Said unknown owners cannot be found on diligent inquiry so that process cannot be served upon them.

3. The present places of residence of the other said defendants, including UNKNOWN OWNERS and NONRECORD CLAIM-ANTS, are unknown to plaintiff and plaintiff's attorneys.

4. This Affidavit is made upon information and belief."

On appeal, plaintiff contends that the affidavit was improper under section 2—206 of the Code. Plaintiff argues that section 2—206 (735 ILCS 5/2—206 (West 1992)) required Irving Federal to make a diligent inquiry to determine the names and addresses of defendants with an interest in the property and, if found, provide direct notice to such defendants rather than notice by publication. Plaintiff asserts that Irving Federal could not have made a diligent inquiry or else it would have known that plaintiff had an interest in the property.

Plaintiff's argument assumes that section 2—206 of the Code governs the requirements for notice by publication in mortgage foreclosure cases rather than section 15—1502(c) of the Mortgage Foreclosure Law. We disagree. Section 15—1502(c) specifically states that "[t]he affidavit need not state that inquiry has been made to ascertain the names or present or last known places of residence of such nonrecord claimants, and no such inquiry need be made" (735 ILCS 5/15—1502(c) (West 1992)).

■ This language takes precedence over any contradictory language in section 2—206. We base our conclusion on section 15—1107(a) of the Mortgage Foreclosure Law (735 ILCS 5/15—1107(a) (West 1992)) and section 1—108(a) of the Code (735 ILCS 5/1—108(a) (West 1992)). These sections clearly stand for the proposition that article II of the Code applies to all proceedings unless other articles of the Code, such as article XV, the Mortgage Foreclosure Law, provide otherwise. In such situations, the specific procedures provided in the other articles are controlling. Consequently, the procedures in the Mortgage Foreclosure Law as to inquiry necessary with respect to identifying and naming nonrecord claimants prior to notice by publication are controlling. Therefore, as specified in section 15—1502(c) of the Mortgage Foreclosure Law, no inquiry need be made to ascertain the names or addresses of nonrecord claimants.

Accordingly, in this case, Irving Federal was not required to make an inquiry to determine the names or addresses of nonrecord claimants, including plaintiff. Thus, even if plaintiff's alleged facts would have shown that Irving Federal could have become aware of plaintiff's likely claim had Irving Federal inquired into the matter, the alleged facts are immaterial because Irving Federal was not required to make such an inquiry under the Mortgage Foreclosure Law.

For these reasons, we conclude that the trial court did not err when it granted RTC's motion to dismiss count I of the complaint as to RTC on the ground that RTC satisfied the requirements for notice by publication set out in section 15—1502(c) of the Mortgage Foreclosure Law.

Plaintiff next contends that it was denied due process when Irving Federal failed to give it actual notice of the mortgage foreclosure proceedings. Plaintiff asserts that because of the information available to Irving Federal from the sworn statements it received pursuant to the escrow agreement, Irving Federal knew or should have known that plaintiff had an interest in the property. Plaintiff argues that due process therefore required Irving Federal to actually notify plaintiff of the mortgage foreclosure proceedings rather than merely attempt to notify plaintiff by publication as an unnamed nonrecord claimant.

For its due process violation claim, plaintiff relies primarily on *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 94 L. Ed. 865, 70 S. Ct. 652, and its progeny, particularly *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706. *Mullane* involved the sufficiency of notice by publication, as allowed by a State statute, to beneficiaries of a common trust regarding judicial settlement of accounts by the trustee. Reversing State courts which upheld the notice given under the statute, the United States Supreme Court stated that when property rights may be diminished or curtailed, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657.

*Mennonite* involved the sufficiency of notice by publication and posting, as allowed by a State statute, to a mortgagee who had recorded the mortgage, regarding a proceeding to sell the mortgaged property for the nonpayment of taxes. Following *Mullane*, the court determined that notice by publication did not satisfy due process requirements and stated that "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." (Emphasis in original.) *Mennonite*, 462 U.S. at 800, 77 L. Ed. 2d at 188, 103 S. Ct. at 2712.

Plaintiff's reliance on *Mullane* and *Mennonite* is misplaced. First, those cases, unlike this case, did not involve interests arising only from a statute which had been modified. Here, on the contrary, plaintiff's claimed interest, a mechanic's lien, was a purely statutory interest (*Liese v. Hentze* (1927), 326 Ill. 633, 637) that had been limited by the subsequent enactment of the Mortgage Foreclosure Law (see,

*e.g.*, 735 ILCS 5/15—1210 (West 1992)) (defining mechanics' lien claimants who have not recorded their claims as "nonrecord claimants" in mortgage foreclosure proceedings)).

■ The Mechanics Lien Act (770 ILCS 60/0.01 *et seq.* (West 1992)) generally gives a contractor the right to a lien if he has furnished materials or labor to the owner of real estate which is thereby enhanced in value. (*State Bank v. Winnetka Bank* (1993), 245 Ill. App. 3d 984, 993.) However, when the legislature enacted the Mortgage Foreclosure Law, effective 1987, it allowed a party in a mortgage foreclosure action to bar and terminate a contractor's right to a mechanic's lien if the lien claim was not recorded or the party had no constructive notice of the claim when the notice of foreclosure was given by publication. 735 ILCS 5/15—1502(b), (c).

■ As a general rule, the legislature may amend a statute which it has enacted. (*Island Lake Water Co. v. La Salle Development Corp.* (1986), 143 Ill. App. 3d 310, 316.) We find nothing in *Mullane* or *Mennonite* which would restrict the power of the legislature to limit purely statutory rights such as those to a mechanic's lien. Accordingly, the limitation on the right to a mechanic's lien in the Mortgage Foreclosure Law does not violate due process.

■ Plaintiff's reliance on *Mullane* and *Mennonite* is also misplaced because the interests in those cases were already perfected when notice by publication was made, while in this case plaintiff's interest was not yet perfected. A mechanic's lien is only valid if each of the statutory requirements is scrupulously observed. (*First Bank v. Rinaldi* (1994), 262 Ill. App. 3d 179, 187.) In order to enforce a mechanic's lien against an encumbrancer, the Mechanics Lien Act requires a contractor either to bring an action to enforce the lien or record a lien claim. 770 ILCS 60/7 (West 1992).

In this case, when Irving Federal recorded its notice of foreclosure on December 3, 1991, plaintiff had not yet recorded its lien claim or brought an action to enforce the lien. Thus, plaintiff's lien claim was merely speculative and not yet enforceable. Neither *Mullane* nor *Mennonite* requires actual notification to those whose interests are merely speculative.

●9 Finally, we note that section 15—1502(c)(4) of the Mortgage Foreclosure Law (735 ILCS 5/15—1502(c)(4)) provides a remedy for a nonrecord claimant if the nonrecord claimant's interest has been improperly barred and terminated following notice by publication. When certain requirements are met, section 15—1502(c)(4) allows nonrecord claimants to bring an action against any party on whose behalf the affidavit of service was filed. Thus a nonrecord claimant may have the right to initiate further action even though his interest was terminated.

For these reasons, we conclude that the termination of plaintiff's mechanic's lien rights in this case did not violate plaintiff's right to due process.

Based on the foregoing, we affirm the trial court's dismissal of count I of plaintiff's amended complaint as to RTC. For the reasons stated in the remainder of this decision, we also affirm the trial court's dismissal of count I of the complaint as to Old Kent and First Federal and reverse the trial court's dismissal of count III of the complaint.

Pursuant to the criteria of Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994), we determine that it is unnecessary to publish the remainder of this decision and it has therefore been deleted for purposes of publication. The entire decision is contained in the Rule 23 order filed with the clerk of this court in the cause of *Teerling Landscaping, Inc. v. Chicago Title & Trust Co.* (2d Dist. April 20, 1995), No. 2—94—0496.

Affirmed in part; reversed in part and remanded.

INGLIS and GEIGER, JJ., concur.